COMMONWEALTH *vs.* CARMEN G. CIAMPA
(and ten companion cases[1]).

Suffolk. April 5, 1989. - December 14, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Agreement between prosecutor and witness, Plea, Capital case. *Evidence*, Consciousness of guilt. *Homicide*.

Testimony pursuant to a plea agreement between a witness and the prosecution founded on the witness's promise of truthful cooperation, as well as the agreement itself, is admissible at a criminal trial. [261]

Certain criminal convictions, which were largely dependent upon the credibility of an admitted accomplice who testified pursuant to a written plea agreement, were reversed by this court, where the trial judge erred in admitting the agreement in evidence without redacting repeated references to the witness's obligation to tell the truth, a reference to the witness's placement in a program for protection of his life and safety, and language that the agreement was contingent on the truth of the witness's representation that he did not shoot the victim of a homicide, and where the judge also erred in admitting testimony that the witness's attorney had signed a statement representing that the witness understood the agreement and that the attorney believed the witness had entered into the agreement freely and voluntarily. [262-263]
O'CONNOR, J., with whom NOLAN and LYNCH, JJ., joined, dissenting.

At a criminal trial in which the Commonwealth's case was largely dependent upon the credibility of an alleged accomplice who testified pursuant to a written plea agreement, the judge's instructions to the jury insufficiently conveyed a need to treat the witness's testimony with caution, failed to focus adequately on the incentives that could have influenced that witness's testimony, and did not dispel any suggestion that the prosecution was vouching for the witness's truthfulness. [263-264]
O'CONNOR, J., with whom NOLAN and LYNCH, JJ., joined, dissenting.

Observations for the guidance of judges in future criminal trials in which an alleged accomplice testifies pursuant to a plea agreement. [264-266]

Statement of this court's function under G. L. c. 278, § 33E, in reviewing a conviction of murder in the first degree. [267-269]

---

[1]Five against Carmen G. Ciampa and five against Mark D. Orlandella.

ABRAMS, J., with whom LIACOS, C.J., joined, concurred in the opinion of the court and commented on other aspects of the judge's instructions to the jury.

INDICTMENTS found and returned in the Superior Court Department, two on September 25, 1984, and nine on December 7, 1984.

The cases were tried before *Sandra L. Hamlin*, J.

*Daniel P. Leonard* (*Kenneth J. Fishman* with him) for Mark D. Orlandella.

*Bernard Grossberg* for Carmen G. Ciampa.

*Jane A. Donohue*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. In November, 1985, the defendants were convicted of murder in the first degree, robbery while armed and masked, assault with intent to murder while armed, assault by means of a dangerous weapon, and receiving a stolen motor vehicle.[2] Each has appealed from his convictions and from an order denying his motion for a new trial.

The case against the defendants depended greatly on the credibility of one William DeVincenzi, an admitted accomplice in the crimes, who testified for the Commonwealth pursuant to a written plea agreement in which the prosecution promised that it would recommend a specific sentence in return for DeVincenzi's truthful testimony in this and other cases. We reverse the convictions because of prejudicial errors in the handling of the plea agreement that were not cured by the judge's charge.

On April 11, 1983, during an armed robbery of Tello's, a store in the East Boston section of Boston, a security guard was shot and killed. One year later, DeVincenzi confessed to participating in the crimes (and in many others). In December, 1984, he signed a plea agreement. Under the plea agreement, in exchange for DeVincenzi's truthful cooperation,

---

[2]Ciampa was also convicted of unlawfully carrying a shotgun on his person.

which was defined in part as the giving of "complete and honest testimony at any and all proceedings if called as a witness," the Commonwealth agreed to accept from DeVincenzi a plea of guilty to manslaughter in connection with the security guard's death and to recommend a sentence of from twelve to twenty years.[3] If DeVincenzi were not to cooperate truthfully and a judge were so to find by a preponderance of the evidence at the time of sentencing, the Commonwealth would be free to make any sentencing recommendation it wished.

DeVincenzi gave extensive trial testimony concerning preparations for the robbery, the robbery and shooting, and the participants' conduct following the event. The jury deliberated during four days before returning their verdicts. During that time the jury asked for further instructions on reasonable doubt, on determining the credibility of witnesses, and on circumstantial evidence. It seems a reasonable inference that the jury were concerned over the credibility of DeVincenzi's testimony.

Before testifying to the events of April 11, 1983, DeVincenzi testified, over objection, on direct examination by the Commonwealth that he came to an agreement with the Suffolk district attorney's office in exchange for his testimony in nineteen cases, including the ones on trial. He stated his understanding that, for his truthful testimony, the district attorney's office would recommend a sentence of from twelve to twenty years on all his cases. DeVincenzi testified to executing the plea agreement. The judge then, over objection, admitted the plea agreement, with certain parts redacted. Again over objection, the judge permitted the prosecutor on

[3]The Commonwealth also agreed (a) to recommend concurrent sentences on other charges pending against DeVincenzi, (b) to endeavor to have DeVincenzi serve his sentence in an appropriate Federal institution, (c) to acknowledge DeVincenzi's truthful cooperation to other governmental agencies and courts, (d) to try to have charges pending in New Hampshire against DeVincenzi disposed of on a concurrent basis, and (e) to use available programs within lawful limits to protect DeVincenzi's life and safety during confinement.

direct examination to read the agreement to DeVincenzi paragraph by paragraph and ask him if what was read to him was his understanding of each paragraph. Next, the prosecutor over objection was allowed to introduce DeVincenzi's testimony that his attorney signed a statement representing that DeVincenzi understood the agreement, that the attorney had reviewed the agreement with him, and that the attorney believed that DeVincenzi's decision to enter into the agreement was an informed and voluntary one.[4]

DeVincenzi then proceeded to describe the robbery of the Tello's store in East Boston during which, according to him, the defendant Orlandella drove a stolen brown Chrysler automobile, DeVincenzi sat in the front passenger seat, and the defendant Ciampa sat in the back seat with a sawed-off shotgun. In the course of the confrontation with the manager of the store and the security guard, who were crossing a parking lot to make a bank deposit, Ciampa shot the security guard and killed him.

The defendants advance a succession of arguments concerning the prosecution's use of the plea agreement in connection with DeVincenzi's testimony. They claim that admission of the agreement in evidence was in effect a representation by the prosecutor that DeVincenzi's testimony was credible, a form of vouching by the prosecutor who was not subject to cross-examination. We disagree and conclude that, if appropriately handled, such a plea agreement does not constitute improper prosecutorial vouching for a witness. Such an agreement does, however, present the possibility that the jury will believe that the witness is telling the truth, thinking that, because of the agreement's truthfulness requirement, the Commonwealth knows or can discover whether the witness is telling the truth. *United States* v. *Wallace*, 848 F.2d 1464, 1474 (9th Cir. 1988) (the implication is "that the prosecutor can verify the witness's testimony

---

[4]The agreement as it went to the jury did not contain the attorney's signed statement, and a reference to the results of a polygraph examination was deleted.

and thereby enforce the truthfulness condition of its plea agreement"). We shall return to this problem.

We accept the rule, as do the United State Circuit Courts of Appeal generally, that testimony pursuant to a plea agreement, founded on a promise of truthful cooperation, and the plea agreement itself are admissible. See *United States* v. *Mealy*, 851 F.2d 890, 899 (7th Cir. 1988); *United States* v. *Dadanian*, 818 F.2d 1443, 1445 (9th Cir. 1987); *United States* v. *Martin*, 815 F.2d 818, 821 (1st Cir.), cert. denied, 484 U.S. 825 (1987); *United States* v. *Townsend*, 796 F.2d 158, 163 (6th Cir. 1986); *United States* v. *Librach*, 536 F.2d 1228, 1230 (8th Cir.), cert. denied, 429 U.S. 939 (1976). The trial judge must study the agreement with care, however, and eliminate prejudicial and irrelevant provisions. See *United States* v. *Cosentino*, 844 F.2d 30, 34-35 (2d Cir.), cert. denied, 109 S. Ct. 303 (1988) (the judge should "eliminate potentially prejudicial, confusing or misleading matter"), citing cases involving redaction of references to protective custody for the witness's family and references to threats against witnesses; *United States* v. *Brown*, 720 F.2d 1059, 1073 (9th Cir. 1983) (reference to polygraph should have been deleted).[5]

---

[5]Some Federal courts have accepted the admissibility of plea agreements that were not only contingent on the witness's truthful testimony but also were contingent on the government's general satisfaction with the witness's testimony. See *United States* v. *Spector*, 793 F.2d 932, 934, 936-937 (8th Cir. 1986), cert. denied, 479 U.S. 1031 (1987) (the agreement provided "[t]he more important we deem that information and cooperation [in solving and prosecuting crimes], the more likely the reduction of charges and [the informant's] sentencing risk"); *United States* v. *Dailey*, 759 F.2d 192, 197, 200-201 (1st Cir. 1985) (government's recommendation for sentencing will be influenced by "the value to the government" of the witness's cooperation; such a contingent plea agreement "should be reserved for exceptional cases, such as this one, where the value and extent of the accomplice's knowledge is uncertain but very likely to be great"); *United States* v. *Waterman*, 732 F.2d 1527, 1531 (8th Cir.), vacated en banc, *id.* at 1533 (1984) (four-to-four decision) (affirming a conviction based on testimony of witness whose subsequent treatment by the government was contingent on the success of the prosecution), cert. denied, 471 U.S. 1065 (1985). We need not go so far in deciding this case because the plea agreement here

The judge erred in the manner in which she handled the plea agreement. Various provisions of the agreement should have been redacted and were not. The statement that the agreement was "contingent upon the truthfulness of [DeVincenzi's] representation to the Commonwealth that he, personally, did not shoot [the victim]" should have been redacted on request by a defendant. That statement can be read as asserting the Commonwealth's reasoned conclusion that DeVincenzi's representation was correct. The judge should also have deleted references in the agreement that DeVincenzi would be placed in a program to protect his life and safety. The language was unfairly prejudicial to the defendants because it implied that the Commonwealth agreed that DeVincenzi reasonably believed his life and safety would be in jeopardy, if he testified against the defendants. See *Commonwealth* v. *Andrews*, 403 Mass. 441, 450 (1988); *United States* v. *Arroyo-Angulo*, 580 F.2d 1137, 1145 (2d Cir. 1978), cert. denied, 439 U.S. 1131 (1979). Repeated references to the witness's obligation to tell the truth should have been deleted. See *United States* v. *Mealy, supra* at 899. Although the judge properly directed that the statement signed by DeVincenzi's attorney should not go to the jury, over objection, she permitted the Commonwealth to obtain testimony from DeVincenzi that his attorney had signed a statement representing that DeVincenzi understood the agreement and that his attorney believed that DeVincenzi's decision to make the agreement was an informed and voluntary one. The attorney's hearsay statement in effect indicated that he believed DeVincenzi was telling him the truth, thus justifying his advice to DeVincenzi to plead guilty and to tes-

did not depend on the results of the prosecution or on the Commonwealth's satisfaction with the witness's testimony.

Testimony pursuant to a plea agreement made contingent on obtaining an indictment or a conviction, as a result of the witness's testimony, would presumably present too great an inducement to lie, would not meet the test of fundamental fairness, and would not be admitted. See *United States* v. *Dailey, supra* at 201; *United States* v. *Waterman, supra* at 1531.

tify against the defendants.[6] We emphasize that this opinion concerns only an agreement between a prosecutor and a witness expressed in a written plea agreement in which the Commonwealth promises a sentencing recommendation in exchange for truthful testimony.

The prejudice arising from admission of the plea agreement with damaging provisions not deleted and from DeVincenzi's testimony concerning his attorney's involvement with the plea agreement was not alleviated by the judge's charge. The charge failed adequately to direct the jury's attention to the potential influences of the plea agreement on DeVincenzi's credibility and failed as well to dispel any implication inherent in the plea agreement, and in the presentation of DeVincenzi as a government witness, that the government knew or was warranting that DeVincenzi was telling the truth.[7] The aspects of the charge most relevant to DeVincenzi's credibility are set forth in the margin.[8] That language insufficiently conveys a need for caution as to DeVincenzi's testimony. The charge did not tell the jury to weigh DeVincenzi's testimony with care and not to consider DeVincenzi's guilty plea as evidence against the defendants. It did not ade-

---

[6]The better course would be also to delete any signature of the prosecutor or other representative of the Commonwealth from the agreement as admitted in evidence.

[7]The defendants objected to aspects of the charge concerning DeVincenzi sufficiently to put the judge on notice of the need for a special instruction concerning DeVincenzi. We need not consider whether the objections were sufficiently focused to preserve as appellate issues various challenges to the jury instructions. Our holding is that the prejudicial admission of portions of the plea agrement was not cured in the judge's charge.

[8]"You should give the testimony of each witness such weight as in your good judgement it is fairly entitled to receive." The fact that a person was an accomplice "in itself raises a question of credibility . . . . The testimony of an accomplice need not be corroborated. In other words, you need not have other evidence, if you find beyond a reasonable doubt that you believe the testimony of William DeVincenzi . . . . Whether you should believe the testimony of an accomplice rests in your good judgment based upon all the evidence before you . . . . You may consider the [plea] agreement and any hopes the witness may have as to future advantages in judging his credibility."

quately focus the jury's attention on the incentives that could have influenced DeVincenzi's testimony. It did not warn the jury that, in entering into the agreement and presenting him as a witness, the government did not know whether DeVincenzi was telling the truth and did not emphasize that DeVincenzi's truthfulness was solely a question for the jury to decide. Only by a cautionary instruction covering these points could the jury have been in a position to evaluate the impact of the plea agreement and testimony presented pursuant to it.

We add a few observations intended to aid trial judges handling similar circumstances in the future. We accept the general rule that on direct examination the prosecution may properly bring out the fact that the witness has entered into a plea agreement and that the witness generally understands his obligations under it. See *United States* v. *Cosentino, supra* at 33; *United States* v. *McNeill,* 728 F.2d 5, 14 (1st Cir. 1984). The timing of the admission of a plea agreement in evidence is in the judge's discretion, if it is clear from argument or comment by the defense that, because of the plea agreement the defendant will challenge the witness's credibility on cross-examination. *United States* v. *Cosentino, supra.* It would be discretionary with a judge to defer admission of the agreement until redirect examination, after the defendant has undertaken to impeach the witness's credibility by showing that the witness had struck a deal with the prosecution in order to obtain favorable treatment. Any attempt at bolstering the witness by questions concerning his obligation to tell the truth should await redirect examination. Such a procedure would tend to mitigate the appearance of prosecutorial vouching that similar questions on direct examination might create. If there is ever a moment when the prosecutor should be allowed to read the agreement, paragraph by paragraph, and ask the witness successively whether each paragraph represents the witness's understanding (as happened in the case before us), it would be during redirect examination and not during direct examination.

A prosecutor's position is a delicate one. The prosecutor must be free to argue that such a witness is credible, but may not explicitly or implicitly vouch to the jury that he or she knows that the witness's testimony is true. Vouching can occur if an attorney expresses a personal belief in the credibility of a witness (*Commonwealth* v. *Bourgeois*, 391 Mass. 869, 878 [1984]), or if an attorney indicates that he or she has knowledge independent of the evidence before the jury verifying a witness's credibility (*Commonwealth* v. *Shelley*, 374 Mass. 466, 470 [1978], *S.C.*, 381 Mass. 340 [1980]). See *United States* v. *Wallace*, 840 F.2d 1464, 1473 (9th Cir. 1980); *United States* v. *Martin*, 815 F.2d 818, 821-822 (1st Cir.), cert. denied, 484 U.S. 825 (1987).

A prosecutor in closing argument may restate the government's agreement with the witness and may argue reasonable inferences from the plea agreement's requirement of truthful testimony. See *United States* v. *Martin*, *supra* at 822-823; *United States* v. *Dennis*, 786 F.2d 1029, 1046-1047 (11th Cir. 1986), cert. denied, 401 U.S. 1037 (1987). If, however, a prosecutor goes beyond the terms and circumstances of the plea agreement and suggests that the government has special knowledge by which it can verify the witness's testimony, reversible error may occur. See *United States* v. *Brown*, 720 F.2d 1059, 1072, 1075 (9th Cir. 1983); *United States* v. *Roberts*, 618 F.2d 530, 534, 536-537 (9th Cir. 1980), cert. denied, 452 U.S. 942 (1981). Certain arguments of a prosecutor to the jury would clearly be improper. See *United States* v. *Wallace*, *supra* at 1474 ("that would not have been the truth," and "she told the truth" were improper vouching); *United States* v. *Martin*, *supra* at 822 ("they told you the truth," disapproved); *United States* v. *Roberts*, *supra* at 533 (closing argument that a detective had monitored the witness's testimony, impermissible vouching). On the other hand, a prosecutor may properly point out that an agreement seeking only the truthful cooperation of the witness does not give the witness any special incentive to lie. *United States* v. *Arroyo-Angulo*, 580 F.2d 1137, 1147 (2d Cir. 1978).

As we have noted, the plea agreement by itself could be viewed as an implied representation by the government that the witness's testimony will be truthful. The implied representation of credibility far exceeds any implication of credibility arising from simply calling a witness to testify for the Commonwealth under oath. Because of the possible improper influences on a jury that could develop from hearing testimony given pursuant to a written plea agreement that offers substantial benefits to a witness but only if the witness tells the truth, courts have generally determined that, although a jury may hear such a witness and receive as an exhibit a copy of the agreement, the judge must specifically and forcefully tell the jury to study the witness's credibility with particular care. See *Untied States* v. *Mealy,* 851 F.2d 890, 900 (7th Cir. 1988) (witnesses' testimony "must be considered with caution and great care. Moreover, their guilty plea is not to be considered as evidence against the defendants"); *United States* v. *Shaw,* 829 F.2d 714, 718 (9th Cir. 1987), cert. denied, 485 U.S. 1022 (1988) (in the circumstances, "[i]t would have been better if the trial court had given an instruction that the reference to truthfulness in the plea agreement does not mean that the government has a way of knowing that the testimony is truthful," but the judge did tell the jury that they should examine the benefited witness's testimony "with greater caution than that of ordinary witnesses"); *United States* v. *Dailey,* 759 F.2d 192, 196, 200 n.8 (1st Cir. 1985) (the jury should "be specifically instructed to weigh the accomplice's testimony with care"); *United States* v. *Sims,* 719 F.2d 375, 378 (11th Cir. 1983), cert. denied, 465 U.S. 1034 (1984) (trial judge dispelled any suggestion of vouching by instructing the jury to keep in mind that testimony given pursuant to an immunity agreement "is always to be received with caution and weighed with great care").

We do not prescribe particular words that a judge should use. We do expect, however, that a judge will focus the jury's attention on the particular care they must give in evaluating testimony given pursuant to a plea agreement that is contingent on the witness's telling the truth.

Because there must be a new trial, we consider issues argued on appeal that are likely to reappear. (a) If evidence of threats made by third parties to certain witnesses is offered to show Orlandella's consciousness of guilt, that evidence should not be admitted for that purpose unless the Commonwealth presents evidence that the threats were made with Orlandella's knowledge, consent, or authorization. See *Commonwealth* v. *Min Sing,* 202 Mass. 121, 127 (1909); *Commonwealth* v. *Robbins,* 3 Pick. 63, 63 (1825). Even then, the judge should consider whether the probative value of evidence of threats by third persons on the consciousness of guilt question is outweighed by its prejudicial effect. See *Commonwealth* v. *Leo,* 379 Mass. 34, 41 (1979). (b) We see no impropriety in trying the defendants jointly. (c) The murder indictments were properly given to the jury on the theory of extreme atrocity or cruelty where the victim was hit with a blast from a shotgun from a distance of several feet and did not die immediately. See *Commonwealth* v. *Glass,* 401 Mass. 799, 803 (1988). (d) Our failure to address other issues does not mean that the defendants' undiscussed appellate arguments are without merit but simply that the issues will not arise again or are not likely to arise in the same form. Asserted problems in the judge's charge not discussed in this opinion will presumably be avoided by jury instructions crafted by the judge who retries the case. For example, at retrial the jury should not be told that they may infer a defendant's consciousness of guilt if they disbelieve the defendant's alibi witnesses. Also, at retrial the language of *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 302 (1979), should not be used when discussing how the jury should assess the testimony of any defense witness who testifies that the men in the vehicle leaving the scene of the crime were not the defendants. The *Rodriguez* opinion concerns the appropriate instruction to be given concerning the possibility of mistaken identification of a defendant by prosecution witnesses.

In discussing the grounds on which we determine that admission of the plea agreement and certain testimony concern-

ing it constitute reversible error, the dissent states its view that, in certain instances, appellate rights were not preserved at trial or an issue was not specifically argued on appeal. Our function under G. L. c. 278, § 33E (1988 ed.), in reviewing a conviction of murder in the first degree is to consider, not only issues clearly preserved for appellate review, but also issues apparent on the record (see *Commonwealth* v. *Brown*, 376 Mass. 156, 166-168 [1978]; *Commonwealth* v. *Corcione*, 364 Mass. 611, 618 [1974]), to determine whether there is a substantial likelihood of miscarriage of justice. For example, in *Commonwealth* v. *Callahan*, 380 Mass. 821, 822 (1980), this court rejected all the arguments advanced on appeal by a defendant convicted of murder in the first degree, and then, based on its independent review of the record, identified an error, not argued below (*id.* at 826), that required the court to order a new trial.

In the course of that portion of the trial that concerned the admission of the plea agreement and testimony concerning it, one or more defense counsel objected to the witness testifying to the content of the agreement; to the self-serving quality of the agreement's references to truthfulness; to the bootstrapping quality of the statement that the benefits to DeVincenzi of the agreement depended on the fact DeVincenzi did not shoot the victim; to reading the agreement to the witness; and to the hearsay representations inherent in testimony concerning the involvement of DeVincenzi's counsel in the execution of the plea agreement. At another point counsel sought, perhaps belatedly, to raise a different but unidentified objection but was barred from doing so.

Surely trial counsel could have done a better job. They could have moved for the redaction of specific portions of the agreement after the judge ruled that the agreement in general was admissible. Indeed a pretrial motion along the same lines would have been appropriate. Perhaps appellate counsel should have focused on the inappropriateness of specific portions of the agreement other than those they thought inappropriate. In any event, we regard as fully before us the question whether there should be a new trial because of the

errors that we have identified and viewed collectively as prejudicial.

As to a crime that once carried the penalty of death and that now alone calls for the imposition of a sentence of life . imprisonment without the possibility of parole, a special duty has been assigned to us under G. L. c. 278, § 33E. We must disregard omissions of counsel if justice requires us to order a new trial. Such an appellate process can rightly be troublesome to the trial judge because it does not mean in all instances in which we order a new trial that the trial judge has erred in any traditional (or even nontraditional) sense. That problem is, however, inherent in the process required of us under § 33E.

The judgments are reversed, the verdicts set aside, and the cases are remanded to the Superior Court for retrial.

*So ordered.*

ABRAMS, J. (concurring, with whom Liacos, C.J., joins). I agree with the opinion of the court, but I add the following comments concerning the instructions in answer to the dissent's contention that the judgments should be affirmed.

1. *Identification.*[1] The defendants challenge the trial judge's instruction on identification as inappropriate and prejudicial. They also claim that the judge's instruction on this point impermissibly shifted the burden of proof from prosecution to defense in violation of the defendants' right to due process of law. The defendants' contentions are based on the inappropriateness of any identification instruction at all

---

[1]The judge stated to the jury: "Are you *convinced* that the witness had the capacity and an adequate opportunity to observe the individual . . ."; "Are you *satisfied* that the witness had the eye-sight and the time necessary under the circumstances to see the individual . . ."; "[A]re you *convinced* that the witness did not make a good faith mistake in the identification of an individual . . ."; "You may consider whether or not a witness may have a motive for lying. You have to be *convinced* that the identification made by a witness subsequent, in other words, after the offense, was the product of his own recollection . . . ." (Emphasis added.)

in the circumstances of the case. They are correct. Positive identification of the defendants was never at issue. The defendants were linked to the crime by the testimony of an accomplice, William DeVincenzi, who had known them for some time before the murder.

The judge's instructions on identification applied to the testimony of Joseph Rugnetta and Christine Lennon, two defense witnesses. Both witnesses observed the getaway car and testified that neither defendant was among the men they saw in the car. Because these witnesses were not "identification" witnesses for the prosecution, an instruction of the sort normally given when a prosecution witness identifies a defendant was wholly inappropriate.

The instruction was not only incorrect but also gravely prejudicial to the defendants. The judge repeatedly referred to factors that might give rise to reasonable doubt if the identification witnesses were testifying for the prosecution; she urged the jury to consider the credibility of Rugnetta and Lennon and whether they might be mistaken or lying when they claimed that the defendants were not the men they had seen in the getaway car. These admonitions, which normally serve the function of requiring a jury to be convinced beyond a reasonable doubt that the defendant *was* the perpetrator of a crime, in this case were applied in a way that encouraged the jury to regard defense witnesses with suspicion. Because of the truthtelling aspect of DeVincenzi's agreement (see the opinion of the court, *ante* at 258-259), combined with the skepticism with which the jurors were instructed to weigh the testimony of the defense witnesses, the error was prejudicial.

After timely objection by defense counsel, the judge attempted to fashion a curative instruction.[2] In the "curative" instruction, the judge stated, "[T]he burden is on the Commonwealth to prove identity of any defendant beyond a reasonable doubt. In mentioning the witnesses Christine Lennon and Joseph Rugnetta, I did not mean to imply that they had

---

[2]At side bar, the assistant district attorney also expressed concern as to the appropriateness of the instructions as applied to defense witnesses.

any burden to prove anything." The judge then lapsed into her previous error by adding: "The purpose of my giving you the identification charge, as far as [Rugnetta and Lennon] are concerned, was so that you could *evaluate their credibility as identification witnesses*" (emphasis added). This reference to credibility had the effect of reemphasizing the skepticism with which these defense witnesses should be viewed. The attempted correction therefore did not eliminate the legal error.

Both the original and the "curative" instruction impermissibly shifted the burden of proof from the Commonwealth to the defense in violation of the defendants' right to due process of law. See *Francis* v. *Franklin*, 471 U.S. 307 (1985); *Sandstrom* v. *Montana*, 442 U.S. 510 (1979); *In re Winship*, 397 U.S. 358 (1970). These instructions plainly were errors of law. Assuming the failure to object to the attempted curative instruction requires analysis under G. L. c. 278, § 33E, the lowering of the Commonwealth's burden of proof resulted in a "substantial likelihood that a miscarriage of justice [had] occurred." *Commonwealth* v. *Cole*, 380 Mass. 30, 38 (1980). See G. L. c. 278, § 33E.

2. *Consciousness of guilt.*[3] The defendants challenge the instruction on consciousness of guilt on the grounds that it deprived them of their constitutional right to present a defense to the charges against them and impermissibly reduced the Commonwealth's burden of proof.

Both defendants offered alibi witnesses. The Commonwealth then offered a witness, Anthony Pezzella, to rebut the alibi of the defendant Ciampa. Pezzella testified that, shortly

---

[3]The instructions were as follows: "It is your memory that controls . . . you have heard . . . testimony from various witnesses, which if you believe it, concerns where Ciampa and Orlandella were at various times on April 11, 1983, the date of this incident. Based upon your determinations of the facts and reasonable inferences based upon credible evidence, it is for you to say whether a defendant has given conflicting stories, or whether in fact you find that there has been presented to you a false alibi. I don't mean to suggest that that is the situation. I am only indicating to you that these are matters you may consider as consciousness of guilt if you first find that they are present in [the] evidence."

after the murder, he questioned Ciampa about his whereabouts at the time of the crime, and Ciampa said that he had been at home that night. Because these two exculpatory accounts offered by Ciampa—his alibi at trial and his statement to Pezzella—were in conflict, the prosecutor requested, and the judge gave, an instruction concerning conflicting accounts as evidence of consciousness of guilt.[4]

The judge's charge improperly broadened the scope of evidence that can be taken as indicating a guilty conscience. Generally, only a defendant's *own* statements or actions can indicate consciousness of guilt. Testimony by alibi witnesses, therefore, is an inappropriate basis for an instruction on consciousness of guilt. See *Commonwealth* v. *Basch*, 386 Mass. 620, 624 (1982).

With respect to Orlandella, there is no evidence of any statement by him as to his whereabouts on April 11. The jurors were permitted to infer *his* consciousness of guilt if they disbelieved his alibi witnesses. This was an unconstitutional burden on his right to present evidence. "[E]very subject [in a criminal prosecution] shall have a right to produce all proofs, that may be favorable to him." Art. 12 of the Massachusetts Declaration of Rights. Cf. *Doyle* v. *Ohio*, 426 U.S. 610 (1976); *Commonwealth* v. *Mahdi*, 388 Mass. 679, 695 (1983).

As to both defendants, the instruction impermissibly shifted the burden of proof from the Commonwealth. In *People* v. *Leasure*, 34 A.D.2d 688 (N.Y. 1970), the court reversed a conviction on these same grounds, with the admonition that "[t]he burden of proof of guilt never shifts from the People." *Id.* at 689. Cf. *Commonwealth* v. *Berth*, 385 Mass. 784, 787 (1982) (burden of proof shifts when a judge instructs, "You either believe one side or you believe the other side"); *Commonwealth* v. *Trefethen*, 157 Mass. 180, 200 (1892) (prosecution may not contend that a denial of guilt is itself evidence against the defendant). This lowering of the

---

[4]Although this instruction apparently was meant to apply only to Ciampa, the judge did not so limit it.

Commonwealth's burden of proof also resulted in a "substantial likelihood that a miscarriage of justice [had] occurred." *Commonwealth* v. *Cole, supra* at 38. See G. L. c. 278, § 33E. I would grant a new trial on the erroneous instructions as well as the manner in which the written plea agreement was handled.


O'CONNOR, J. (dissenting, with whom Nolan and Lynch, JJ., join). Much of the court's opinion consists of "observations intended to aid trial judges . . . in the future," *ante* at 264, and of commentary concerning anticipated issues on retrial. *Ante* at 267. I direct my attention solely to that part of the court's opinion that sets forth the court's rationale for reversing the convictions.

The court is correct when it says that the admission in evidence of DeVincenzi's plea agreement did not constitute impermissible "vouching," and that, "if appropriately handled," "testimony pursuant to a plea agreement, founded on a promise of truthful cooperation, and the plea agreement itself are admissible." *Ante* at 260, 261. The court concludes, however, that the judge committed reversible error in the manner in which she handled the plea agreement. *Ante* at 262-264. I do not agree with that conclusion.

The court identifies four perceived errors in the judge's handling of the plea agreement. *Ante* at 262. The first perceived error is that the judge failed to redact from the plea agreement the statement that the agreement was "contingent upon the truthfulness of [DeVincenzi's] representation to the Commonwealth that he, personally, did not shoot [the victim]." "That statement," according to the court, "can be read as asserting the Commonwealth's reasoned conclusion that DeVincenzi's representation was correct." Neither defendant argues the point on appeal. The defendants' failure to argue the point is understandable. The provision that the agreement is contingent on the truthfulness of DeVincenzi's representation that he did not shoot the victim cannot fairly be construed as the Commonwealth's asserted conclusion,

reasoned or otherwise, that the representation was truthful. The statement says no more than that, if DeVincenzi's representation indeed should turn out to have been false, the Commonwealth will have no obligation with respect to a sentencing recommendation. Redaction was neither required nor appropriate.

The second "error" identified by the court as a reason to reverse the convictions is that "[t]he judge should also have deleted references in the agreement that DeVincenzi would be placed in a program to protect his life and safety." *Ante* at 262. Neither defendant requested the judge to redact those references nor objected to them nor argues that issue on appeal. Nevertheless, I agree that redaction of that language would have been appropriate. I discuss below the effect of the judge's failure to do so.

Next, the court states that "[r]epeated references to the witness's obligation to tell the truth should have been deleted" from the plea agreement. *Ante* at 262. I submit there was no error, and certainly no prejudicial error, in this regard. The court concedes that the agreement providing DeVincenzi's obligation to tell the truth was properly in evidence. Nothing in *United States* v. *Mealy*, 851 F.2d 890, 898-899 (7th Cir. 1988), relied on by the court, supports the court's assertion that it was reversible error for the judge not to redact repeated references to the witness's obligation to tell the truth. In *Mealy*, five witnesses testified pursuant to plea agreements. The agreements were five pages in length, and each contained four or five references to that witness's promise to testify truthfully. The *Mealy* court said that, "[i]n drafting plea agreements, the government should avoid unnecessarily repetitive references to truthfulness if it wishes to introduce the agreements into evidence. Nevertheless, we do not believe that the plea agreements in this case disproportionately emphasized or repeated the promise of truthful testimony." *Id.* at 899-900. The repetitions in the present case do not come close to the twenty to twenty-five repetitions that the court found acceptable (and certainly not reversible error) in *Mealy*.

The last asserted error on which the reversal of these convictions turns is that the judge "permitted the Commonwealth to obtain testimony from DeVincenzi that his attorney had signed a statement representing that DeVincenzi understood the agreement and that his attorney believed that DeVincenzi's decision to make the agreement was an informed and voluntary one." *Ante* at 262. This evidence was hearsay and was inadmissible. The proper consequence of that error is discussed below.

The court reasons that the prejudice from the judge's erroneous failure to redact the aforementioned provisions, and her erroneous admission in evidence of DeVincenzi's attorney's out-of-court statement, was not alleviated by the judge's jury instructions, and that the errors therefore require reversal. *Ante* at 263. In my view, the court has correctly identified only two errors. One is the judge's failure to redact from the plea agreement the witness protection references, and the other is the admission of the attorney's out-of-court statement.

At trial, the defendants did not preserve the witness protection issue for appellate review. Furthermore, they have not argued the point on appeal. Even so, of course, we are required by G. L. c. 278, § 33E, to consider whether the failure to redact the witness protection references, viewed in the context of the entire case, poses a substantial likelihood of a miscarriage of justice with respect to the convictions of murder in the first degree. Also, with respect to the other convictions, pursuant to our decision in *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967), we conduct a similar test; one, as we have previously said, that may be harder than the test under c. 278, § 33E, for the defendant to satisfy. *Commonwealth* v. *Lennon*, 399 Mass. 443, 448-449 n.6 (1987). *Commonwealth* v. *Richmond*, 379 Mass. 557, 562-563 n.4 (1980).

The court, unaided by argument by the defendants, does not discuss the significance of the plea agreement's references to the witness protection program except to say that the references "implied that the Commonwealth agreed that

DeVincenzi reasonably believed his life and safety would be in jeopardy, if he testified against the defendants." *Ante* at 262. Even if DeVincenzi's belief about the defendants' dangerousness were more than marginally significant in the total context of these cases, a very doubtful proposition, the inclusion in the agreement of the witness protection references does not demonstrate, despite the court's contrary suggestion, that DeVincenzi considered those references to be necessary or even advisable. For all that appears in the record those references were routinely included in such agreements, DeVincenzi did not insist on them, and indeed was indifferent about their inclusion here. Surely, the jury's exposure to that kind of evidence did not create a substantial risk of a miscarriage of justice.

I turn to the erroneous admission of DeVincenzi's testimony that his attorney had signed a statement to the effect that DeVincenzi's decision to enter into the plea agreement was an informed and voluntary one. "The attorney's hearsay statement," the court says, "in effect indicated that he believed DeVincenzi was telling him the truth, thus justifying his advice to DeVincenzi to plead guilty and to testify against the defendants." *Ante* at 262-263. The court indulges in a non sequitur. Yes, the attorney's statement was inadmissible hearsay, but it was absolutely harmless. The attorney's statement implies nothing whatsoever about whether the attorney believed DeVincenzi's account of the robbery and murder.

In reversing the defendants' convictions, the court relies on four perceived errors. Two of these, in my view, were not errors, and the other two, considered individually or cumulatively, were not reversible. Therefore, I cannot join the court's opinion or subscribe to its result.

Further discussion is appropriate. Despite the court's expressed limitation of its holding to the four asserted evidentiary errors and the judge's failure in her instructions to cure the perceived prejudice therefrom, the court's opinion seems also to suggest that, although the issues may not have been properly preserved for the purpose of review, there were

other defects in the instructions which may have inclined the court toward reversing the convictions. The court states as follows: "The charge failed adequately to direct the jury's attention to the potential influences of the plea agreement on DeVincenzi's credibility and failed as well to dispel any implication inherent in the plea agreement, and in the presentation of DeVincenzi as a government witness, that the government knew or was warranting that DeVincenzi was telling the truth. . . . [The] language [of the charge] insufficiently conveys a need for caution as to DeVincenzi's testimony. The charge did not tell the jury to weigh DeVincenzi's testimony with care and not to consider DeVincenzi's guilty plea as evidence against the defendants. It did not adequately focus the jury's attention on the incentives that could have influenced DeVincenzi's testimony. It did not warn the jury that, in entering into the agreement and presenting him as a witness, the government did not know whether DeVincenzi was telling the truth and did not emphasize that DeVincenzi's truthfulness was solely a question for the jury to decide. Only by a cautionary instruction covering these points could the jury have been in a position to evaluate the impact of the plea agreement and testimony presented pursuant to it." *Ante* at 263-264.

I do not agree that the jury instructions bearing on the plea agreement were defective. Furthermore, even if they were somehow defective in that regard, such defects, if not properly preserved for appellate review, would not be cause for reversal in the absence of a demonstration, not attempted by the court, that the defects created a substantial risk of a miscarriage of justice. In my view, there clearly was no error creating such a risk.

Early in its opinion, *ante* at 260, the court expresses its disagreement with the defendants' "claim that admission of the agreement in evidence was in effect a representation by the prosecutor that DeVincenzi's testimony was credible, a form of vouching by the prosecutor who was not subject to cross-examination." The court was right. Vouching occurs when "the prosecution portrays itself 'as a guarantor of

truthfulness' by making personal assurances that the witness
is telling the truth or by . . . indicating that information not
heard as evidence supports the testimony." *United States* v.
*Munson*, 819 F.2d 337, 344-345 (1st Cir. 1987), quoting
*United States* v. *Martin*, 815 F.2d 818, 821 (1st Cir.), cert.
denied, 484 U.S. 825 (1987). *United States* v. *Leslie*, 759
F.2d 366, 378 (5th Cir. 1985), rev'd on other grounds, 783
F.2d 541, 542 n.1 (1986) (en banc), vacated on other
grounds, 479 U.S. 1074 (1987). *United States* v. *Sims*, 719
F.2d 375, 377 (11th Cir. 1983), cert. denied, 465 U.S. 1034
(1984). There was no vouching in this case. The plea agree-
ment's requirement that DeVincenzi testify truthfully as a
condition precedent to the Commonwealth's obligation to
make a favorable sentencing recommendation neither implies
the prosecutor's assurance of DeVincenzi's credibility nor
suggests that the Commonwealth has information not known
to the jury that supports DeVincenzi's testimony. See *United
States* v. *Mealy*, *supra* at 899-900. *United States* v. *Munson*,
*supra* at 344-345; *United States* v. *Martin*, *supra* at 821-
822; *United States* v. *Townsend*, 796 F.2d 158, 162-163 (6th
Cir. 1986); *United States* v. *Leslie*, *supra* at 378; *United
States* v. *Sims*, *supra* at 377-378. Furthermore, despite the
contrary view expressed in *United States* v. *Wallace*, 848
F.2d 1464, 1474 (9th Cir. 1988), such a plea agreement sim-
ply does not imply that the Commonwealth knows or can dis-
cover whether the witness is telling the truth. That is espe-
cially the case where, as here, the plea agreement provides
that the truthfulness of the witness's testimony is for the sen-
tencing judge, not the prosecutor, to decide. Therefore, there
was no need for the judge in this case to give an instruction
designed to neutralize such a nonexistent implication.
Rather, an instruction in that regard would have been
inappropriate.

Did the jury instructions fail adequately to direct the
jury's attention to the potential influences of the plea agree-
ment on DeVincenzi's credibility, as the court charges? I
think not. The court states that "[t]he charge did not tell the
jury to weigh DeVincenzi's testimony with care and not to

consider DeVincenzi's guilty plea as evidence against the defendants." *Ante* at 263. In this Commonwealth, as in other States, but unlike in the Federal courts, judges instructing juries in civil or criminal cases ordinarily are not permitted to comment on the evidence. See *Commonwealth v. Kane*, 19 Mass. App. Ct. 129, 138, 138 n.9 (1984). See also 9 J. Wigmore, Evidence § 2551 (Chadbourn ed. 1981). Thus, Federal cases are of doubtful assistance to a determination whether the judge in these cases should have commented to the jury that DeVincenzi's testimony should be weighed "with care." Furthermore, I am aware of no case that requires the judge in the circumstances of these cases to instruct the jury that a witness's guilty plea is not to be considered as evidence against the defendants.

Even if this court were to adopt a rule requiring trial judges to make sure that the jury are aware of the special circumstances that may impair the credibility of an accomplice testifying pursuant to a written plea agreement, no rule should be adopted that would require a more focused or stronger instruction than the one given in this case. The judge instructed the jury in part as follows: "An accomplice is one, and I am referring now to William DeVincenzi, one who knowingly, voluntarily, and with common intent, unites with a principal offender in the commission of a crime. A person who is an accomplice to a crime is a criminal himself and that in itself raises a question of credibility. . . . The testimony of an accomplice . . . need not be corroborated, although you may consider whether such is the case in weighing an accomplice's credibility. Whether you should believe the testimony of an accomplice rests in your good judgment based upon all the evidence before you. You should not convict a defendant unless you believe beyond a reasonable doubt that the accomplice is telling the truth.

"Now, in this case there is also evidence that William DeVincenzi, who has admitted his participation in the Tello's murder, made a plea agreement with the Government . . . under which certain promises were made to him in return for his truthful cooperation and testimony. You may consider

this agreement and any hopes the witness may have as to future advantages in judging his credibility, as well as the credibility of any witness who came before you to whom promises had been made." The judge should not be required to place his or her thumb on the scale to benefit a defendant. If, indeed, there should be any requirement that the judge remind the jury that the testimony of an accomplice pursuant to a plea agreement may be suspect, that requirement was met in this case.

The instructions were adequate, but, even if they were not, it cannot reasonably be said that the jury may have been unaware that DeVincenzi's situation presented to the jury a unique and critical issue of his credibility. From the openings and the evidence the jury were informed that DeVincenzi was an accomplice, that he was a criminal, that his testimony had in a sense been "bought" by the Commonwealth, and that his motivation was highly suspect. Surely in the course of this seven-week trial, even if there had been no comment by the judge, the jury would have been acutely aware of the necessity that they weigh DeVincenzi's testimony with care. Thus, in my view, if the judge did fail to state the obvious with as much vigor as the court would require, there is no risk and certainly not a substantial one that, had the instructions met the court's requirements, the result would have been different.

I am aware that the defendants have argued numerous issues not relied on by the court in reversing these convictions and barely mentioned by the court or not mentioned at all. I, too, will refrain from what would be an unproductive discussion of those issues since the court has remanded the cases for retrial.