COMMONWEALTH *vs.* WILLIAM MARANGIELLO.

No. 90-P-3.

Suffolk. June 16, 1990. - September 19, 1990.

Present: ARMSTRONG, DREBEN, & IRELAND, JJ.

Further appellate review granted, 408 Mass. 1105 (1990).

*Evidence*, Relevancy and materiality, Knife. *Practice, Criminal*, Instructions to jury, Judicial discretion, Agreement between prosecutor and witness, Plea. *Identification.*

At the trial of a defendant on indictments for armed assault with intent to murder, assault and battery with a dangerous weapon, and armed robbery, the judge erred in admitting in evidence two knives which were found on the ground when the defendant was arrested ten weeks after the robbery, where the foundation for attributing the knives to the defendant and for inferring that a certain knife was used in the stabbing was slight, while the potential for prejudice to the defendant was clear. [262-264]

The record of a trial of a defendant on indictments arising from an attack on a deaf and speech-impaired victim showed that, although the judge acted properly in questioning the victim in order to clarify his testimony, his repetitions of the same question had the effect of confusing the victim to the prejudice of the defendant. [264-266]

In the circumstances of a criminal case, neither the prosecutor's closing argument nor the admission of testimony on direct examination that a plea agreement with a prosecution witness was conditioned on the truthfulness of the witness's testimony provided a basis for reversal. [266-267]

INDICTMENTS found and returned in the Superior Court Department on July 13, 1988.

The cases were tried before *Robert W. Banks*, J.

*Charles W. Rankin* for the defendant.

*Frank Santisi*, Assistant District Attorney (*Lauren Inker*, Assistant District Attorney, with him) for the Commonwealth.

DREBEN, J. The defendant was tried and found guilty on charges[1] arising out of an attack on a deaf and speech-impaired victim on September 4, 1987. The victim did not identify the defendant as his assailant, and the only testimony linking the defendant to the crime came from a woman who was charged with the same offenses as the defendant and who had entered into a plea agreement with the Commonwealth requiring her to testify truthfully at the defendant's trial. In his appeal, the defendant asserts three claims: 1) two knives which were found on the ground when the defendant was arrested ten weeks after the robbery were erroneously admitted in evidence; 2) the judge erred in questioning the victim repeatedly after he had unequivocally testified that the person who had stabbed him was not in the courtroom; and 3) the assistant district attorney improperly vouched for the credibility of the witness who had entered into a plea agreement.

The claims of prejudice in the admission of the knives and the examination of the victim are particularly troublesome because the identity of the defendant, and hence the convictions, rested entirely on the uncorroborated testimony of an alleged accomplice who had entered into a favorable plea agreement. See *Commonwealth* v. *Wallace*, 848 F.2d 1464, 1475-1476 (9th Cir. 1988). It may be that the defendant's claims, when considered separately, do not require reversal. We hold, however, that the cumulative effect of what occurred at trial was potentially so prejudicial to the defendant as to require a new trial.

We relate the facts that could have been found by the jury. On September 4, 1987, the victim, a thirty-four year old male, went to Vincent's Cafe in Maverick Square and had dinner. During the course of the evening, he drank twelve beers.[2] After dinner, he sat with two women, teaching them sign language. The women were later identified as Ve-

---

[1]The defendant was convicted on indictments charging armed assault with intent to murder, assault and battery with a dangerous weapon, and armed robbery.

[2]He acknowledged he was an alcoholic.

ronica Surface and Lori Heil. A man approached the table, and sometime thereafter Surface and the man left the bar. Surface returned, and, at about 11:30 P.M., said it was time to leave and took the victim's hand. Surface, the man, Heil, and the victim left and got into Heil's car. According to the victim, he was sitting in the back seat between Surface and the man from the bar, and another man, whom he had not seen before, sat in front with Heil. Heil testified there were only four persons in the car. She said, however, that she had made arrangements to meet a man, not the defendant, that night at midnight.

The car stopped at an abandoned area near the waterfront. The victim, Surface, and the man who had been at the bar walked towards the water. The man grabbed the victim from behind, held a knife to his throat, and pushed him to the ground. Surface combed through his pockets. After the victim was robbed, the man got on top of him and stabbed him three times in the neck.[3]

The victim identified Heil and Surface at a probable cause hearing but did not identify the defendant. Heil testified that she was charged with the same three offenses as was the defendant and that she had an agreement with the Commonwealth to plead guilty to a single count of assault and battery with a dangerous weapon and to testify truthfully at the defendant's trial. In return, the other charges would be dismissed, and the Commonwealth would recommend a sentence of probation of one year. Heil's testimony identified the defendant as the man who was in the bar, drove in her car with Surface and the victim, and then returned to the car with Surface, but without the victim. She did not see the robbery or stabbing and claimed she knew nothing about what happened after the other three persons left the car.

Ten weeks after the robbery, the defendant was seen in the back seat of a vehicle in a parking lot and was arrested. After he and three or four others had left the vehicle, a police officer saw two knives on the ground. The knives were admit-

---

[3]The medical reports indicate that none of the major blood vessels in the neck was severed.

ted in evidence,[4] the defendant specifically objecting to the admission of the large "Buck" knife.

1. *Admission of the knives.* The defendant filed a motion in limine to exclude the admission in evidence of the knives. The judge denied the motion saying:

> "I will have to see what the whole evidence is and what the medical records evidence is and what the medical records say. It may be one of these knives may well fit the description of the wound. I'm not sure what the state of the evidence will be, but I am admitting it now for whatever consideration the jury might want to give to evidence that the defendant carries or is in possession of knives on occasion."

The judge also refused, although requested by the defendant, to give a limiting instruction that the jury could not assume that these were the knives used in the actual stabbing or to give some other limiting instruction. See *Commonwealth* v. *Toro*, 395 Mass. 354, 357 (1985).

While it is improper to allow weapons to be introduced to show that the defendant has a bad character, or a propensity to commit crimes, *Commonwealth* v. *Monico*, 396 Mass. 793, 807 (1986), "it is commonly competent to show the possession by a defendant of an instrument capable of being used in the commission of the crime without direct proof that that particular instrument was in fact the one used." *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 461 (1989), quoting from *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39 (1950). A trial judge has great leeway in determining whether evidence is relevant to prove an issue raised by the pleadings. He also has broad discretion in determining whether the inflammatory value of evidence outweighs its probative value, and his determination will rarely be disturbed on appeal. *Commonwealth* v. *Roberts*, 407 Mass. 731, 736 (1990). *Commonwealth* v. *Chasson*, 383 Mass. 183, 187 (1981).

---

[4] We have examined the knives. One is a large lethal knife marked "Buck" in a black leather case; the other is a small paring knife.

"[C]ircumstances, [however,] may be such that the danger of prejudice to the defendant from the disclosure will outweigh the probative value of the evidence." *Commonwealth v. Toro*, 395 Mass. at 357. In this case, looking at all the circumstances, we think the introduction of the knives, "even [though] remotely relevant," may have been "unfairly prejudicial" to the defendant. *United States v. Ferreira*, 821 F.2d 1, 7 (1st Cir. 1987). This is particularly true where, as here, there was no limiting instruction.[5]

The link between the defendant and the knives was tenuous. Four or five persons left the vehicle before the knives were found on the ground; there is no evidence that they belonged to the defendant.[6] Moreover, the link between the knives and the stabbing ten weeks earlier was equally slim. No evidence showed that the lethal "Buck" knife was the knife used in the stabbing, and the medical evidence describing the knife wounds bears no more relation to that knife than to any other. See note 3, *supra.* Thus, the foundation

---

[5]See, for example, the useful charge quoted in *United States v. Robinson*, 560 F.2d 507, 511 n.4 (2d Cir. 1977), cert. denied, 435 U.S. 905 (1978), where the trial judge admitted testimony that, when arrested, the defendant had a gun of the same caliber as that used in the robbery but refused to permit the gun itself to be put in evidence or shown to the jury. The trial judge instructed the jury that the "testimony was admitted for a very limited purpose. It may be considered only for whatever value, if any, it has on the issue of the defendant's identity as one of the robbers, that is, on the question of whether this defendant was the person who committed the crimes charged. You may not draw any conclusions or inferences or engage in any speculation as to the defendant's character or reputation on the basis of this testimony or about anything else other than the narrow thing that I have just mentioned to you."

[6]The testimony of the officer was as follows:

Q.  "And, Officer, when you placed the defendant under arrest outside of the motor vehicle, did you observe any objects in the vicinity of his person? Were there any objects on the ground when you placed him under arrest?"

A.  "Yes. There were two knives."

Q.  "And to the best of your knowledge, were those two knives in the vicinity of the defendant's person prior to the defendant getting out of the motor vehicle?"

. . . .

(Objection Overruled)

A.  "It was out of the motor vehicle, on the ground."

for attributing the knives to the defendant, see *Commonwealth* v. *Toro*, 395 Mass. at 356, and for inferring that the "Buck" knife was used in the stabbing was slight. See *United States* v. *Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir.), cert. denied, 400 U.S. 834 (1970). In contrast, the potential prejudice is clear. See *Commonwealth* v. *Monico*, 396 Mass. at 807.

2. *Identification testimony.* The defendant complains that the judge through repeated questioning improperly led the victim to change his definite statement that his attacker was not in the courtroom to a statement that he was unsure whether he was there. A judge has wide discretion in clarifying the statements of a confused witness, particularly in a case like the present, where, because of the victim's infirmities, two interpreters were used throughout the trial. Although the judge acted properly in questioning the witness, an examination of the transcript leads us to conclude that, instead of clarifying the matter, the judge's questioning had the unfortunate effect of confusing the witness to the prejudice of the defendant. The circumstances were as follows:

On cross-examination, the victim was asked to look around the courtroom, and tell counsel: "[D]o you see the man who robbed you and stabbed you on September 4, 1987." The victim's answer was "No." Counsel for the defendant asked no further questions.

On redirect examination, the prosecutor was given much latitude by the judge because of the victim's communication disabilities. Although some of the victim's answers to the prosecutor's questions were unresponsive, he testified that if the man were in the courtroom today, "I think I would recognize him."

The judge thought the victim was confused because there had been an incident outside the courtroom. He proceeded to question the victim, over the defendant's objection. The defendant's counsel pointed out that there could be no confusion because the victim was in the courtroom "when [the defendant] was brought in with handcuffs on." The judge

responded, "This young man [the victim] is a very intelligent young man. He knows who the defendant is."

The judge then asked the victim, "I would like you to look at this young man sitting next to [defense counsel], Ms. Donovan, the young man sitting here with the white pullover jersey at this table, and I would ask you this, are you able to say that he is not the man who stabbed you, he is the man who stabbed you, or you do not know or anything else you would like to say?"

When the victim answered evasively (e.g., "my mind is blank," "I can't remember," "it looks similar"), the judge repeated the question again, and again, so that the same question was asked seven times. At least twice, the judge asked, "[I]s it fair to say that you are not sure," and in his charge, the judge characterized the victim's testimony as being "unsure" in his identification.[7]

While, as indicated earlier, we do not think the judge erred in attempting to clarify the victim's testimony, we are left with the impression that in this case the sevenfold asking of the same question by the judge created confusion. Moreover, the judge by characterizing the victim as unsure and by giving a partial *Rodriguez* charge (*Commonwealth* v. *Rodriguez*, 378 Mass. 296, 302 [1979]), may have influenced the

---

[7]Although the judge in his charge stated that both counsel conceded that the victim had not made an identification, the defendant points out correctly that this was a mischaracterization. Counsel for the defendant claimed that the victim had testified that his attacker was not in the courtroom.

After instructing the jury that the government has the burden of proving identification, the judge charged: "It is not essential that a witness himself or herself be free from doubt as to the correctness of their statement. However, you the jury, must be satisfied . . . . beyond a reasonable doubt . . . . Now you have had some identification testimony here given by the alleged victim of the case, and it seems that both counsel in their arguments have conceded that the victim has not made an identification of the defendant as the person who allegedly assaulted and robbed him on the day in question. On the basis of his evidence, at best, he is saying he is unsure.

"Now, you may consider, in appraising that witness' testimony, how good the lighting conditions were," etc. (other factors bearing on reliability. See *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 302 [1979].) Because there had been no identification, *Rodriguez* instructions were not appropriate. Cf. *Commonwealth* v. *Ciampa*, 406 Mass. 257, 267 (1989).

jury to reject the victim's earlier statements that his attacker was not in the courtroom and that he would have recognized him if he were.

3. *Vouching for Lori Heil.* This case was tried before the decision of the Supreme Judicial Court in *Commonwealth* v. *Ciampa*, 406 Mass. 257, 260 (1989). That case admonished that a plea agreement conditioned on the truthfulness of a witness's testimony against his accomplices "presents the possibility that the jury will believe that the witness is telling the truth, thinking that, because of the agreement's truthfulness requirement, the Commonwealth knows or can discover whether the witness is telling the truth." See also *Commonwealth* v. *Colon*, 408 Mass. 419, 445 (1990).

For this reason, the court in *Ciampa* suggested that, in future cases, certain precautions be taken, including the practice that attempts "at bolstering the witness by questions concerning his [or her] obligation to tell the truth should await redirect examination. Such a procedure would tend to mitigate the appearance of prosecutorial vouching that similar questions on direct examination might create." *Ciampa*, at 264. In the present case, Heil's obligation to be truthful was elicited on direct examination.

The court in *Ciampa* also noted that the prosecutor's position in such cases "is a delicate one." *Id.* at 265. While he "must be free to argue that such a witness is credible, [he] may not explicitly or implicitly vouch to the jury that he or she knows that the witness's testimony is true." *Ibid.* The prosecutor here at least four times stated that Lori Heil told the truth, and also argued that the victim "is saying that [Lori Heil] is telling you the truth." In context, those statements were probably not suggestions that the prosecutor had knowledge independent of the evidence before the jury, but, viewed against the background of the truthfulness condition of the plea agreement, which was brought (by the standards enunciated *after* the trial) improperly to the jury's attention, the statements must be regarded as at least "questionable," *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990),

because of their susceptibility to being misunderstood by the jury. See *Commonwealth* v. *Ciampa*, 406 Mass. at 265.

Neither the prosecutor's closing argument nor the admission of the truthfulness condition on direct examination would be a basis for a reversal in this case, even if it had been tried after the *Ciampa* decision. There was none of the repeated emphasis of the truthfulness condition that characterized the prosecution in *Ciampa*. See discussion in *Commonwealth* v. *Gagliardi, ante* 225, 240-242 (1990). Nevertheless, as we stated earlier, where, as here, the prosecutor's entire case against the defendant hinged on Heil's credibility, the cumulative effect of what occurred — most particularly the improper admission of the knives and the unfortunate effect of the judge's questioning of the victim — had a potential of prejudice to the defendant sufficient to warrant a new trial.

The judgments are reversed, the verdicts set aside, and the matter is remanded to the Superior Court for retrial.

*So ordered.*