## COMMONWEALTH vs. DAVID S. GREEN.

No. 89-P-233.

Essex. June 12, 1989. — September 11, 1989.

Present: DREBEN, KASS, & SMITH, JJ.

Further appellate review granted, 406 Mass. 1102 (1990).

*Motor Vehicle*, Operating under the influence. *Narcotic Drugs. Controlled Substances. Evidence*, Judicial notice. *Practice, Criminal*, Instructions to jury, Requests for jury instructions, Voluntariness of statement. *Words*, "Narcotic."

A criminal defendant charged with operating a motor vehicle "while under the influence of . . . narcotic drugs . . . as defined in section one of chapter ninety-four C," was not entitled to a required finding of not guilty on the ground that the Commonwealth offered no evidence that the substance in question, codeine, was a narcotic drug or that it was derived from opium, where the fact that codeine is a derivative of opium, hence a narcotic drug, was a fact susceptible of judicial notice. [767-769]

The judge at the trial of a complaint for operating a motor vehicle while under the influence of narcotic drugs improperly precluded the defendant from introducing evidence that the substance in question fell within an exception to the definition of "narcotic drug" set forth in G. L. c. 94C, § 1, and a new trial was required. [769-770]

At the trial of a criminal case, the jury were to be instructed that they may, but were not required to, accept any matter of which the judge has taken judicial notice. [770]

At a criminal trial, counsel were entitled to be informed, prior to closing argument, of the judge's rulings on the defendant's requests for instructions. [770-771]

On remand of a criminal case, the judge's conclusions as to the voluntariness of the defendant's statements were to be supported by findings of fact, set out in writing. [771]

At the trial of a complaint for operating a motor vehicle while under the influence of narcotic drugs, there was sufficient corroboration of the defendant's admission that he had taken codeine to warrant submitting the case to the jury. [771]

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on April 13, 1988.

In the jury session of the Haverhill Division, a pretrial motion to suppress evidence was heard by *William H. Sullivan*, J., and the case was tried before him.

*Donald S. Sheldon* for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. The primary issues in the defendant's appeal from his conviction for operating under the influence of narcotic drugs (G. L. c. 90, § 24) relate to the proof needed to show that codeine is a narcotic as defined in G. L. c. 94C, § 1. General Laws c. 90, § 24(1)(*a*)(1), as appearing in St. 1982, c. 373, § 2 ("driving under" statute), defines the offense as operating a motor vehicle "while under the influence of . . . narcotic drugs . . . as defined in section one of chapter ninety-four C . . . ."

1. *Codeine as a narcotic.* Since the defendant claims that his motion for a required finding of not guilty should have been allowed, we narrate the events of April 12, 1988, taking the evidence most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). On that evening, at 11:40 P.M., Detective Foulds of the North Andover police department noticed a white pickup truck parked in the middle of Waverly Street in that town. The lights were on, the engine was running, and the operator was slumped over the wheel. As Foulds approached the truck on foot, it drove off. Following in his cruiser, Foulds saw the truck weave to the wrong side of the road and ultimately hit a telephone pole. Foulds opened the truck's door, whereupon the defendant "fell out into [his] hands." He was "thick-tongued"; his eyes "appeared beady"; he had trouble standing up; he leaned against the truck to keep his balance. Upon questioning, he stated that he was on pain medication — codeine — for which he had a prescription.

Later, when the defendant was taken to the police station and booked, the police during an inventory search found a pharmacist's label, indicative of a filled prescription for the defendant. The label, in addition to the defendant's name, included the words:

> "Take one capsule four times a day as
> needed for pain
> Drug Exp. 4-89          Cod. Caps."

While at the station, the defendant stated that, although he was supposed to take one pill four times a day, he had taken four at once.

Shawn Conway, another North Andover policeman who had joined Detective Foulds at the scene of the accident, testified that he had attended a basic course in narcotics in which he learned about drug classifications and the effects of the general type of drugs found "on the street." It was his opinion, based on his observations of the defendant, including the "very little scent of alcohol," that the defendant was operating under the influence of narcotics.

We turn to the relevant statutes. As indicated earlier, the "driving under" statute, G. L. c. 90, § 24 (1)(a)(1), refers to "narcotic drugs . . . as defined" in G. L. c. 94C, § 1. The relevant part of c. 94C, 1, is set forth in the margin.[1]

The Commonwealth introduced no evidence that codeine is a narcotic drug or that it is derived from opium. On this ground — namely lack of evidence that codeine is a narcotic — the defendant moved for a required finding of not guilty. In denying the defendant's motion, the judge noted that c. 94C, § 31, which establishes classes of controlled substances for purposes

---

[1] General Laws c. 94C, § 1, as inserted by St. 1971, c. 1071, § 1, provides:

"As used *in this chapter*, the following words shall, unless the context clearly requires otherwise, have the following meanings [emphasis supplied]:

" . . . .

" 'Narcotic drug', any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

(*a*) Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate;

(*b*) Any salt, compound, isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of the substances referred to in clause (*a*), but not including the isoquinoline alkaloids of opium;

(*c*) Opium poppy and poppy straw; . . . ."

of violations of c. 94C, lists codeine as a Class A narcotic[2] and, referring to Class E, subsection (*b*),[3] ruled: "The law states that prescription drugs are narcotics." Indeed, the judge charged the jury in accordance with his ruling.

While the judge was not correct in equating prescription drugs with narcotics, we concur in his conclusion that, despite a lack of evidence that codeine is a derivative[4] of opium, the defendant was not entitled to a required finding of not guilty.

Prior to its amendment by St. 1971, c. 1071, § 1, the definition of narcotic drug, referred to in the "driving under" statute, listed specific drugs which, among others, included opium, morphine, heroin and codeine. See G. L. c. 94, § 197, as appearing in St. 1957, c. 660, § 1.[5] In 1971, Massachusetts substantially adopted the Uniform Controlled Substances Act, 9 Uniform Laws Annot. § 101(o) (Master ed. 1988), including its definition of "narcotic drug." The Uniform Act had, in turn, adopted the definition contained in the Federal act. See 21 U.S.C. § 802 (17) (1982 & Supp. V 1987).

The reason for defining narcotics more generally is evident in G. L. c. 94C, § 2, as amended by St. 1972, c. 806, § 7 (set forth in the Appendix to this opinion). Section 2(*a*) provides that the Commissioner of Public Health shall establish five schedules of controlled drugs. Section 2 (*a ½*) requires him to include by regulation those controlled substances which are from time to time designated as controlled substances under the Federal act, 21 U.S.C. §§ 801 et seq. In other words, as scientific data regarding drugs are developed, the commissioner is to update the lists of controlled substances to reflect current

---

[2] Under G. L. c. 94C, § 31, codeine is not specifically included in the list of Class A controlled substances, but the following opium derivatives are: codeine methylbromide and codeine-N-oxide. Their "salts, isomers, and salts of isomers" are also included.

[3] Class E substances, subsection (*b*), include "Prescription drugs other than those included in Classes A, B, C, D and subsection (*a*) of this class."

[4] We use the term "derivative to include all the terms used in the definition of narcotic drug in c. 94C, § 1, e.g., salt, compound, isomer, etc. See note 1, *supra*.

[5] Prior to St. 1971, c. 1071, the "driving under" statute, G. L. c. 90, § 24(1)(*a*)(1), referred to the definition of narcotic in G. L. c. 94, § 197.

knowledge; he is also to include in the lists all substances
which are controlled under the Federal act. To effect these
purposes and to expedite conformance with the Federal act,[6]
the Legislature substituted a general definition of narcotic drugs
in place of the list of specific narcotic drugs. Clearly, there
was no intent to change the elements of the offense in the
"driving under" statute.

Chief Justice Shaw's discussion in *Commonwealth* v. *Herrick*, 6 Cush. 465, 468-469 (1850), albeit in a somewhat different context, is persuasive. In that case the defendant claimed
that a law, enacted subsequent to the date of his offense, which
changed the statutory definition in the liquor law from "spirituous liquors" to the broader term "intoxicating liquors" required
his acquittal. Shaw wrote:

> "Suppose the prior act had made the offence consist in
> retailing rum, brandy, and so on, enumerating all the
> common strong drinks; but in consequence of the changes
> in the modes of compounding mixed liquors, and the
> invention of new names, the statutes were in danger of
> being evaded, and a law should pass, similar to the one
> in question, substituting the general term, 'intoxicating
> liquors,' for the specific kinds named, it would not, we
> think, repeal the existing law, because the substituted
> enactment would embrace all which were expressed in
> the previous one, and some more."

Just as Chief Justice Shaw found there could be no ground
to hold that a person convicted under the prior law for selling
"spirituous liquors" would not be punishable in the same manner under the new law and that its operation would be the
same, we find it difficult to hold that the Legislature by substituting a general definition of "narcotic drug" has effected a
change in the elements of the offense of "operat[ing] a motor
vehicle while under the influence of . . . narcotic drugs."

---

[6] The commissioner is to issue regulations within thirty days of Federal
designation of a substance as a controlled substance under Federal law. See
G. L. c. 94C, § 2 (*a* ½), set forth in the Appendix to this opinion.

When looked at as a whole, it is without doubt that G. L. c. 94C treats codeine as a narcotic. Section 31 establishes the classes of controlled substances for purposes of setting penalties, and, as we have already indicated, Class A includes two forms of codeine. See note 2, *supra*. "Codeine" is also specifically included as a narcotic drug in G. L. c. 94C, § 31, Class E, subsection (*a*)(1).[7]

The defendant contends that since the "driving under" statute refers only to § 1 of c. 94C, we cannot look to the other sections of that chapter to import meaning into the definition of "narcotic drug." We think this is too confining a reading of § 1 in light of the legislative history and purpose of c. 94C.

We need not, however, rely on the statutory classifications to conclude that the defendant was not entitled to a required finding of not guilty because of lack of evidence that codeine is a narcotic. The ordinary lexical meaning of codeine[8] is in accord with the classifications of c. 94C. That codeine is a derivative of opium appears "indisputably true" and is either a matter of "common knowledge" or a subject of "generalized knowledge . . . readily ascertainable from authoritative sources." It thus falls within the group of facts of which a judge

---

[7] General Laws c. 94C, § 31, as inserted by St. 1971, c. 1071, § 1, provides that Class E controlled substances shall include:

"(*a*) Any compound, mixture, or preparation containing any of the following limited quantities of *narcotic drugs*, which shall include one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer upon the compound, mixture, or preparation, valuable medicinal qualities other than those possessed by the *narcotic drug* alone:

(*1*) Not more than 200 milligrams of *codeine* per 100 milliliters or per 100 grams . . . " (emphasis supplied).

[8] The American Heritage Dictionary of the English Language 257-258 (1976) defines codeine as follows: "An alkaloid narcotic [chemical components omitted] derived from opium or morphine, used for relieving coughing, as an analgesic, and as a hypnotic." Morphine is defined as "An organic compound extracted from opium . . . ." *Id*. at 854. Webster's Third New International Dictionary 438 (1971) defines codeine as follows: "[A] crystalline alkaloid [chemical formula omitted] . . . made from morphine, and similar to the latter but feebler in its action; morphine methyl ether." Morphine is defined as "a bitter, crystalline narcotic habit-forming base [chemical formula omitted], that is the principal alkaloid of opium occurring in amounts up to 15 percent. *Id*. at 1471.

may appropriately take judicial notice. Liacos, Massachusetts Evidence 19 (5th ed. 1981). See McCormick, Evidence §§ 329-330 (3d ed. 1984). See also *Commonwealth* v. *Marzynski*, 149 Mass. 68, 72 (1889) (court could take judicial notice that ordinarily cigars are not medicines); *Commonwealth* v. *Nickerson*, 236 Mass. 281, 308 (1920) (whiskey is an "intoxicating liquor"); Proposed Mass.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either [1] generally known within the territorial jurisdiction of the trial court or [2] capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned").

Numerous courts elsewhere in determining the sufficiency of evidence have taken judicial notice that specific drugs are narcotics. See, e.g., *People* v. *Robinson*, 14 Ill. 2d 325, 330 (1958) (heroin, even when found in a compound, is a derivative of opium); *State* v. *Yanez*, 89 N.M. 397, 398 (1976) (morphine is an opium derivative); *People* v. *Vaughn*, 35 A.D.2d 889, 889 (N.Y. 1970) (cocaine is a narcotic); *State* v. *Brock*, 34 Ohio App. 2d 175 (1973) (heroin is a habit forming drug); *Kovash* v. *State*, 519 P.2d 517, 522 (Okla. Crim. App.), cert. denied, 419 U.S. 830 (1974) (barbiturate is a salt of barbituric acid). See also *United States* v. *Chiarelli*, 192 F.2d 528, 532 (7th Cir. 1951), cert. denied, 342 U.S. 913, reh. denied, 342 U.S. 950 (1952) (heroin is a derivative of opium); *Jordan* v. *United States*, 345 F.2d 302, 304 (10th Cir. 1965) (heroin derivative of opium and hence a narcotic); *United States* v. *Gould*, 536 F.2d 216, 218-219 (8th Cir. 1976) (cocaine hydrochloride is a derivative of coca leaves).[9] Contra *White* v. *State*, 161 Ind. App. 568, 572-575 (1974) (refusal to take judicial notice that methadone is a narcotic drug).

Judicial notice of similar facts has also been taken to uphold the sufficiency of indictments or informations. See, e.g., *Commonwealth* v. *Gabhart*, 160 Ky. 32, 34-35 (1914) (morphine is a derivative of opium); *State* v. *Stavricos*, 506 S.W.2d 51,

---

[9] It should be noted that, unlike Massachusetts, where the rules of evidence are only proposed, the Federal Rules of Evidence were adopted and made effective July 1, 1975. Rule 201(b) of the Federal Rules is identical to the proposed Massachusetts rule cited in the text.

55-56 (Mo. Ct. App. 1974) (morphine is a derivative of opium); *State* v. *Vallie,* 82 Mont. 456, 461 (1928) (morphine is a derivative of opium); *State* v. *McDuff,* 691 S.W.2d 569, 570-571 (Tenn. Crim. App. 1984) (cocaine is a derivative of coca leaves); *James* v. *United States,* 61 F.2d 912 (5th Cir.), cert. denied, 288 U.S. 613 (1932) (morphine is a derivative of opium); *Melanson* v. *United States,* 256 F. 783, 786 (5th Cir. 1919) (judicial notice taken of facts of chemistry contained in the United States Pharmacopoeia).

In sum, we think that the judge, particularly in light of c. 94C when examined as a whole, could, in his discretion, have taken judicial notice that codeine is a derivative of opium and hence a narcotic drug.[10] Thus, while the judge declined to reach the question of judicial notice, and incorrectly relied on the portion of c. 94C relating to prescription drugs, the absence of proof that codeine is a narcotic did not entitle the defendant to a required finding of not guilty.

2. *Statutory exception.* Subparagraph (*b*) of the definition of "narcotic drug" set forth in G. L. c. 94C, § 1, contains an exception for substances which are "isoquinoline alkaloids of opium." See note 1, *supra.*[11] Approximately a month prior to trial, a District Court judge (who was also the trial judge) heard the defendant's motion to suppress which was based in part on the claim that codeine, a derivative of morphine, fell within the statutory exception. The motion was denied, and the defendant was not permitted to introduce evidence to substantiate his claim. On the day of trial (at the voir dire hearing), the defendant was granted leave to file an offer of proof to support his contention that codeine fell within the statutory exception. The offer of proof included an excerpt from a book entitled "Medicinal Chemistry, A Biochemical Approach" by Thomas Nogrady (Oxford University Press, 1985)[12] and ad-

[10] Nothing herein requires a judge to take such judicial notice or prevents him or her from ruling that more direct proof is required.

[11] The reason for this exception would appear to be that these alkaloids "have no significant influence on the central nervous system." Uelman and Haddox, Drug Abuse and the Law Sourcebook § 2.4(a), at 16 (1988).

[12] The excerpt was reproduced in the Commonwealth's brief and refers to morphine as an isoquinoline. That codeine is a derivative of opium is

vised the court that at trial the defendant "intended to bring further documentation and testimony to establish that codeine was in fact an isoquinoline alkaloid of opium."

It was error to preclude the defendant from introducing evidence to show that codeine came within the statutory exception. However unlikely the defendant's contention, he was entitled to offer evidence on this issue. Because of this error a new trial is required.

3. *Other matters.* We comment only briefly upon other issues raised by the defendant which may arise on retrial.

(a) *Jury instructions.* As indicated earlier, the judge was wrong in charging the jury, that "it's the law of this Commonwealth that narcotic drugs are controlled substances and, further, that prescription drugs, other than those listed in certain categories which, you know, are not applicable, are considered, you know, Class E drugs."

On retrial, the Commonwealth may choose to introduce evidence that codeine is a narcotic. If it does not, and if the judge, in his or her discretion, takes judicial notice that codeine is a derivative of opium, it appears from our cases that the jury should be instructed that they *may* but *are not required* to accept any matter of which the judge has taken judicial notice. See *Commonwealth* v. *Kingsbury,* 378 Mass. 751, 755 (1979); Proposed Mass.R.Evid. 201(g) ("In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed"). Cf. *Commonwealth* v. *Golston,* 373 Mass. 249, 252-253 (1977). Contra *United States* v. *Gould,* 536 F.2d at 219-221. For a comprehensive discussion of the differences of opinion as to the conclusive effect of judicial notice see 9 Wigmore, Evidence §§ 2567, 2567a (Chadbourn rev. 1981).

(b) *Requests for instructions.* We need not consider the prejudicial effect, if any, of the judge's failure to inform counsel prior to closing argument of his rulings on the defendant's requests for instructions. We emphasize, however, the impor-

---

easily ascertainable from authoritative sources including dictionaries; whether codeine is an isoquinoline alkaloid of opium is not readily determinable by a layperson.

tance of complying with the mandatory requirements of Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). "[C]ounsel is entitled to know the Judge's treatment of each proposed request in order that counsel may frame their closing arguments accordingly." Smith, Criminal Practice and Procedure § 1845 (1983).

(c) *Voluntariness of the defendant's statements.* We are troubled by the lack of findings to support the judge's implicit rulings that the defendant knowingly waived his Miranda rights and that his statements were voluntary. Although the evidence as to his physical and emotional condition seems to raise serious questions, see *Commonwealth* v. *Hosey,* 368 Mass. 571, 574 n.1, 577-579 (1975), we are not prepared, in the absence of findings, to hold that the rulings were wrong. The judge on remand should hold a new hearing on these questions and should, if he finds a waiver of Miranda rights or that the statements were voluntary, make careful written findings of fact.

(d) *Corroboration.* We mention in passing *Commonwealth* v. *Leonard,* 401 Mass. 470, 472 (1988), only to rule it inapplicable. The defendant's admission that he had taken codeine was not the only evidence that he was operating his motor vehicle under the influence of narcotic drugs. His erratic driving, his demeanor, and the prescription label all corroborated his statement.

Because of the error in precluding the defendant from introducing evidence that codeine fell within the statutory exception and because of the erroneous instructions of the judge, the judgment is reversed, the verdict is set aside, and the matter is remanded to the District Court for a new trial.

*So ordered.*

APPENDIX.

General Laws c. 94C, § 2.

(a) For the purpose of administration and regulation of the manufacture, distribution, dispensing, and possession of controlled substances by persons authorized under this chapter, the commissioner shall establish by regulations pursuant to the provisions of chapter thirty A five schedules incorporating the five schedules of controlled substances under the "Comprehensive Drug Abuse, Prevention and Control Act of 1970" or any amendment thereof. In addition thereto the commissioner shall by regulation as aforesaid establish a sixth schedule which shall include all prescription drugs not included in the first five schedules.

(a ½) The commissioner may, pursuant to the provisions of chapter thirty-A, delete or reschedule all substances enumerated in the schedules established pursuant to the provisions of subsection (a), except that if any substance which has not been scheduled pursuant to the provisions of this section is designated a controlled substance under the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 or any amendment thereof, or if any substance which has been scheduled pursuant to the provisions of this section is designated a controlled substance of greater abuse liability under the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 or any amendment thereof, the commissioner, pursuant to the provisions of chapter thirty A, shall, not more than thirty days after publication of final notice in the federal register or not more than thirty days after the effective date of any federal statute affecting the scheduling of controlled substances under said federal act or any amendment thereof, issue a regulation controlling the substance in a schedule corresponding to the federal schedules.

(b) In making any finding under subsection (a) of this section or under subsection (a) of section three, the commissioner shall consider the following factors with respect to each drug or other substance proposed to be controlled or removed from the schedules.

(1) Its actual or relative potential for abuse.

(2) Scientific evidence of its pharmacological effect, if known.

(3) The state of current scientific knowledge regarding the drug or other substance.

(4) Its history and current pattern of abuse.

(5) The scope, duration and significance of abuse.

(6) What, if any, risk there is to the public health.

(7) Its psychological or psysiological dependence liability.

(8) Whether the substance is an immediate precursor of a substance already controlled under this chapter.

(*c*) The commissioner acting jointly with the board of registration in pharmacy shall by regulation pursuant to the provisions of chapter thirty A exclude any non-narcotic substance from a schedule if such substance may, under the Federal "Comprehensive Drug Abuse, Prevention and Control Act of 1970" and the Food, Drug, and Cosmetic Act, be lawfully sold over the counter without a prescription.

(*d*) Authority to control under this section shall not extend to distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1954.