## COMMONWEALTH *vs.* MIGUEL ANGEL ROSADO.

Worcester. September 4, 1990. - November 13, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Homicide. Practice, Criminal,* Agreement between prosecutor and witness, Venue, Challenge to jurors, Assistance of counsel, Conduct of prosecutor, Capital case. *Constitutional Law,* Speedy trial, Assistance of counsel. *Evidence,* Photograph, Prior conviction. *Jury and Jurors. Identification. Due Process of Law,* Fair trial, Identification.

No substantial risk of a miscarriage of justice appeared at a murder trial with respect to testimony given by a prosecution witness pursuant to a plea agreement. [563-565]

At a murder trial the judge did not abuse his discretion in denying the defendant's motion for a change of venue based on allegedly prejudicial pretrial publicity. [566]

Dismissal of an indictment charging the defendant with first degree murder was not required due to a thirteen-month delay in his trial caused by interlocutory appellate consideration of the constitutionality of the death penalty statute under which he was charged, inasmuch as Mass. R. Crim. P. 36 was complied with, and the defendant was not denied his constitutional rights to a speedy trial. [566-567]

At a murder trial the judge properly denied the defendant's motion to suppress evidence of a witness's identification of the defendant at a probable cause hearing; moreover, defendant's counsel was not ineffective in the manner in which he handled the hearing. [567]

At a murder trial, the judge did not abuse his discretion in admitting in evidence four photographs of the victim's body taken prior to an autopsy. [567-568]

At a murder trial, the judge properly declined to charge the jury that they could find the defendant guilty of voluntary manslaughter, where the evidence did not permit such a charge. [568]

On appeal from a judge's denial of a criminal defendant's motion for a new trial without holding an evidentiary hearing, this court stated that the defendant, who, by affidavit, had asserted that his trial counsel was ineffective because the defendant was not called as a witness at trial, may wish to pursue this issue by filing a new motion for a new trial; and, furthermore, that it was probable that an evidentiary hearing will be required on the issue. [568]

There was no merit to a criminal defendant's assertion that he was denied
effective assistance of counsel at trial. [569-570]

Nothing in claims by a defendant convicted of first degree murder regard-
ing the prosecutor's alleged misconduct in presenting the Common-
wealth's evidence at trial, his conduct at a probable cause hearing, or in
his presentation of closing argument warranted a new trial. [570-571]


INDICTMENT found and returned in the Superior Court De-
partment on June 14, 1983.

Pretrial motions were heard by *John J. Irwin, Jr.*, J., and
the case was tried before him.

*Andrew L. Mandell* (*Audrey S. Gordon* with him) for the
defendant.

*Claudia R. Sullivan & Sean J. Gallagher*, Assistant Dis-
trict Attorneys, for the Commonwealth.                     '

WILKINS, J. The defendant Rosado is the third of three
defendants to have been tried and convicted of murder in the
first degree for the killing of State Trooper George L. Hanna
in Auburn on February 26, 1983. This court confirmed the
conviction of Jose Colon in an opinion that was released in
August. See *Commonwealth* v. *Colon*, ante 419 (1990). To-
day, we have confirmed the conviction of Abimael Colon-
Cruz. See *Commonwealth* v. *Colon-Cruz*, ante 533 (1990).

The defendant, represented by new counsel on appeal, has
advanced many issues. In addition to asserting substantive
errors in certain rulings by the judge, he argues that he was
denied the assistance of counsel to which he was constitution-
ally entitled, that the prosecutor's conduct in various respects
denied him due process of law, and that he is entitled to re-
lief under G. L. c. 278, § 33E (1988 ed.). We affirm the
conviction.

The evidence in this trial was sufficiently similar to that in
the prior trials that a detailed recitation of the facts is not
necessary. The defendant with Colon and Colon-Cruz left an
apartment in Worcester and traveled to Auburn. Unlike the
two prior trials, this trial had no evidence of any criminal
purpose the three men may have had when they left the
apartment. Trooper Hanna stopped the red Chevrolet Vega

automobile in which the three men were traveling and ordered the men out of it. A fight broke out while Hanna was searching the men. Hanna was shot seven times and died at a hospital shortly after the incident. There was evidence that all three men had participated in the attack on Hanna and fled in the Vega. One John Iandoli, Jr., followed the Vega, obtained its license plate number, and observed the three occupants of the vehicle.

Carmen Mangual testified that, after the three men returned to the Worcester apartment, the defendant said that, when Trooper Hanna stopped them, the defendant told the other two that "we're going to have to fire because he's going to search us and he's going to find the gun." Mangual also testified that at the apartment the defendant laughed and said his gun was empty. Mangual's testimony was important to the prosecution's case because it supported other evidence that showed that the defendant participated in the fight with Hanna and was not, as he claimed, merely a bystander.

1. In this case, as in the *Colon* and *Colon-Cruz* cases, the defendant challenges the admission of Mangual's testimony because it was given pursuant to an agreement to cooperate with the prosecution. In that agreement, Mangual agreed to testify in all three cases "in accordance with [her] statements dated February 27, 1983 and March 18, 1983." If she did so, the prosecutor in turn agreed to assent to the dismissal of charges against her. That agreement, which in prior opinions we have called a plea agreement, was admitted in evidence without objection, and the defendant did not seek to bar Mangual's testimony on the ground that it would be improperly tainted by the effect of the plea agreement.

The defense's treatment of Mangual's testimony and her plea agreement was substantially the same as the treatment that the defendants gave Mangual's testimony and the plea agreement in the *Colon* and *Colon-Cruz* cases. No counsel in any of the three cases objected to the admission of the agreement; no counsel moved to bar Mangual from testifying because of the terms of that agreement; and new counsel have argued on appeal, nevertheless, that her testimony was erro-

neously admitted. In the two prior cases, the court considered whether the admission of Mangual's testimony created a substantial likelihood of a miscarriage of justice and decided that it did not. See *Commonwealth* v. *Colon-Cruz, supra* at 552-553; *Commonwealth* v. *Colon, supra* at 443-444. In each instance, the court concluded that the admission of the plea agreement in evidence, the cross-examination of Mangual, defense counsel's closing jury argument, and the judge's jury instructions put Mangual's credibility before the jury in such a way that there was no substantial likelihood of a miscarriage of justice in admitting her testimony. See *Commonwealth* v. *Colon-Cruz, supra* at 552-553; *Commonwealth* v. *Colon, supra* at 444. We also conclude that there was no likelihood of a miscarriage of justice.[1]

As in the two earlier cases, Mangual's credibility was placed sharply in question. The plea agreement was before the jury as an exhibit. Defense counsel cross-examined Mangual, disclosing that, after consulting a lawyer, she had executed the plea agreement knowing that several charges against her would be dismissed if she complied with the agreement. Mangual was impeached by prior convictions on drug and weapons charges. Although defense counsel did not develop in cross-examination that the agreement did not require Mangual to testify truthfully, he made the point in his closing argument: "Do you get the impression that somebody's trying to keep some evidence from you here? They want to limit her to those statements. They don't want her coming in here and telling the truth." Finally, the judge's charge directed the jury to consider as to any witness: "What rewards or inducements or benefits are flowing to that witness as a consequence of that witness' testimony and, if so, have those promises in any way, in any way affected the credibility of that particular witness?"

---

[1]The judge did not consider the issue in passing on the defendant's motion for a new trial and, therefore, the question is not before us as if appellate rights had been preserved. See *Commonwealth* v. *McGrath*, 361 Mass. 431, 435 n. 2 (1972); *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 18 (1986).

In determining whether justice may not have been done, it is instructive in a practical sense that all three defense counsel opted to let Mangual testify subject to the influence of the plea agreement and with that agreement before the jury. They made that tactical choice even though an agreement to testify in a particular way, without reference to the truth, is plainly an improper agreement; is inadmissible over objection; and, over objection, would bar the testimony of a witness who had made such an agreement, as long as that agreement remained in effect. The alternative prospect was that, if Mangual's testimony were to be excluded as long as the plea agreement was in effect, the plea agreement might be terminated and Mangual would still testify, but not pursuant to a plea agreement that expressed no interest in whether her testimony was truthful.

Because Mangual's testimony tied the defendant to active involvement in the joint effort to shoot Trooper Hanna, its admission was not inconsequential to the Commonwealth's case. The potential for untruthfulness in Mangual's testimony was, however, apparent and brought sufficiently to the jury's attention. We, therefore, see no substantial likelihood of a miscarriage of justice where Mangual testified under an agreement that itself placed no obligation on her to tell the truth.[2]

2. We consider next and reject the defendant's challenges to various rulings made before, during, and after trial. As to certain of these substantive issues, the defendant has also claimed that his trial counsel's related conduct denied him effective assistance of counsel or that the prosecutor acted

---

[2]What we said about the reasonable choice of counsel not to challenge the admission either of Mangual's testimony or the plea agreement, and what we have said about the absence of a substantial likelihood of a miscarriage of justice in the admission of Mangual's testimony and the plea agreement, disposes of the defendant's claim that because counsel did not object to the admission of Mangual's testimony, he was denied the effective assistance of counsel.

improperly, or both. We shall dispose of these contentions in our discussion of the related substantive arguments.[3]

a. In *Commonwealth* v. *Colon, supra* at 435-437, we discussed the issue of the judge's denial of Colon's motion for a change of venue based on a claim of prejudicial pretrial publicity. See *Commonwealth* v. *Colon-Cruz, supra* at 551-552. We need not repeat the governing principles here.

The judge did not abuse his discretion in denying the defendant's similar motion. There was an extensive voir dire of potential jurors. The most recent newspaper article about the crime had been published at the conclusion of the trial of Colon-Cruz, two months before the jury were selected. The record presents very little pretrial publicity that might have been prejudicial and nothing at all to show any empaneled juror was prejudiced by knowledge of the case. Although ten of the sixteen empaneled jurors had heard of the crime and two other defendants had already been convicted in separate trials in Worcester Superior Court of the murder of the victim prior to the trial of this defendant, we see nothing inappropriate in the denial of the defendant's motion for a change of venue.

b. The defendant argues that his motion to dismiss the indictment should have been allowed because of the delay in his trial (from November 15, 1983, until December 19, 1984), caused by interlocutory appellate consideration of the constitutionality of the death penalty statute under which he was charged. See *Commonwealth* v. *Colon-Cruz,* 393 Mass. 150 (1984). He bases his argument on Mass. R. Crim. P. 36, 378 Mass. 909 (1979), and on his right to a speedy trial under the State and Federal Constitutions. This court explicitly stated that the judge's interlocutory report of the questions concerning the constitutionality of the death penalty, on the request of the Commonwealth and over the defendant's objection, was appropriate. *Commonwealth* v. *Colon-Cruz,*

---

[3]One substantive issue the defendant raises was resolved against him in *Commonwealth* v. *Ramirez,* 407 Mass. 553, 554-557 (1990). See *Commonwealth* v. *Colon-Cruz, supra* at 552; *Commonwealth* v. *Colon, supra* at 441-443.

*supra* at 155. The defendant makes no claim that he was in fact prejudiced by the delay. Indeed, this court's response to the report resulted in the defendant's being relieved, before trial, of the threat of the imposition of the death penalty. The defendant's motion to dismiss was not filed until several months after the decision of this court on the interlocutory report was released. The defendant participated in the appellate process and urged the court to reach the merits of the reported question. *Id.* at 154. Rule 36 was complied with, and the defendant was not denied his constitutional rights to a speedy trial.

c. The trial judge made careful findings on the defendant's claim that identification of him by John Iandoli, Jr., at the April 12, 1983, probable cause hearing was so impermissibly suggestive as to deny the defendant due process of law under the State and Federal Constitutions. We rejected substantially the same argument in *Commonwealth v. Colon-Cruz, supra* at 540. The judge ruled that the defendant did not meet his burden of proving that the procedures employed were improper. The defendants were not handcuffed. They were sitting in a row of chairs with others in a busy courtroom. There was no error in denying the motion to suppress Iandoli's testimony. See *Commonwealth v. Freiberg,* 405 Mass. 282, 295 (1989); *Commonwealth v. Cincotta,* 379 Mass. 391, 395 (1979). Nor was defense counsel remiss in the way he handled the hearing.[4]

d. The judge did not abuse his discretion in admitting four photographs of the victim's body taken prior to the autopsy. See *Commonwealth v. Medeiros,* 395 Mass. 336, 351 (1985). The fact that two photographs showed surgical inter-

---

[4]The defendant argues that, before the probable cause hearing, the prosecutor prejudicially withheld exculpatory evidence to the effect that Iandoli had failed to identify a photograph of the defendant. The defendant claims that, if counsel had known of that evidence, counsel could have sought and obtained a less suggestive courtroom setting. Because of the nonsuggestive setting in which the probable cause hearing was held, the defendant was not prejudiced by any late disclosure. Defense counsel was aware well before trial of the fact that Iandoli had failed to identify a photograph of the defendant.

vention was adequately explained to the jury. The pictures were relevant on the issue of extreme atrocity or cruelty and aided in understanding the pathologist's testimony. The judge warned the jury not to react improperly to the photographs. Defense counsel is not to be faulted for not seeking additional instructions concerning the photographs.

e. The judge correctly declined to charge the jury that they could find the defendant guilty of voluntary manslaughter. The evidence did not permit such a charge because the jury would not have been warranted in having a reasonable doubt on the question whether the defendant killed the victim in the heat of passion, on reasonable provocation, or on sudden combat. See *Commonwealth* v. *McLeod*, 394 Mass. 727, 738, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985); *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980).

f. The judge denied the defendant's pro se motion for a new trial without holding an evidentiary hearing. Almost every ground asserted for a new trial was one available for appellate consideration on the record. The judge had no obligation to hear evidence, to make findings of fact, or to rule on those issues. In disposing of the issues that the defendant has argued on appeal, we have resolved substantially all the issues raised in the motion for a new trial.

The defendant did assert in his new trial motion, however, that his trial counsel was ineffective because he did not prepare the defendant to testify or, alternatively, to make a knowing and intelligent waiver of the right to testify. By affidavit, the defendant asserts that he would have testified that he did not shoot the victim, did not aid the shooters, and did not share their intent. If the defendant wishes to pursue this issue, he may file a new motion for a new trial alleging that his counsel was ineffective in a constitutional sense, because the defendant was not called as a witness. It is probable that an evidentiary hearing will be required on the issue.[5]

---

[5]The transcript sets forth a conversation between the defendant and his trial counsel in the holding cell prior to the last day of the trial in which

3. We turn next to the defendant's remaining claims that he was denied the effective assistance of counsel. In testing counsel's conduct to see if it meets constitutional standards, we apply the test expressed in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n. 3 (1985). We look at the performance of counsel to see if it was measurably below the standard to which ordinary counsel are held, and, if it was, we then assess whether it is likely that the error may have made a material difference to the defense. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977) ("there ought to be some showing that better work might have accomplished something material for the defense"). Some claims of ineffectiveness are not sufficiently substantial to require any discussion. We pass by, for example, the alleged failure of defense counsel on cross-examination to develop inconsistencies between (a) Mangual's trial testimony and (b) her prior testimony or statements where her previous observations were as harmful as or more harmful to the defendant than her trial testimony.

The defendant has failed to show "what facts might have been uncovered by such investigation or how they would have improved his case" (*Commonwealth* v. *Bolduc*, 375 Mass. 530, 540 [1978]), if his counsel had interviewed Iandoli before the probable cause hearing. Similarly, assuming that defendant is correct in his claim that his trial counsel did not have transcripts of the Colon and Colon-Cruz trials, the defendant has not shown that he was prejudiced by the omission.

We have studied defense counsel's cross-examination of Mangual and, although there are matters that could have been handled differently and perhaps better, we see no constitutional violation of the defendant's right to counsel. In this respect, the record is not significantly different from that in the *Colon* case, where a similar claim was rejected. *Com-*

the defendant stated that he did not want to testify and that the decision not to testify was his own. It appears that trial counsel obtained the recording of that conversation to cover any later claim that the defendant did want to testify.

*monwealth* v. *Colon, supra* at 434. Counsel developed Mangual's desire to protect herself and her boyfriend; obtained an admission that she had lied in prior statements; pointed out in closing argument the allegedly favorable housing accommodations the police had given Mangual; and presented Mangual's prior convictions. Counsel brought out the circumstances that led Mangual to make statements that incriminated the defendant, including alleged oral abuse by the police, a claimed denial of access to a lawyer, and alleged threats by the police. The factual basis for the jury to conclude that Mangual's inculpatory statements were coerced was adequately developed.

A party is not entitled to present on redirect examination the circumstances of prior convictions by which its witness is impeached. See *Commonwealth* v. *Maguire*, 392 Mass. 466, 471 (1984). Here defense counsel did not object to such questioning of Mangual, and any tactical reason for not objecting is not readily apparent. Any omission of counsel could not, however, have influenced the result in this case.

4. We come to those contentions of the defendant, not yet addressed, that the prosecutor engaged in misconduct that requires a new trial.

a. The defendant complains that, because certain evidence in his trial was less favorable to him than evidence in one or both of the earlier trials, the prosecutor knowingly presented and argued misleading and inconsistent theories concerning which of the defendants held and used particular weapons. The evidence, including Mangual's testimony, differed in certain respects among the three trials. We see no basis, however, for a claim that the prosecutor was responsible for those differences or argued the facts unfairly to the jury. That there would be differences in the evidence among the three trials was inevitable. Moreover, in a case presented on a joint venture theory, differences of the kind the defendant complains about are not apt to be crucial.

b. We next consider two claims of prosecutorial misconduct arising in different ways out of the probable cause hearing. Remarks that a prosecutor made at the probable cause

hearing to the defendant's then counsel ("[D]o you know what you're doing?" "[D]on't let these other fellows set you up") should not have been made. They did not, however, significantly or prejudicially affect the defendant's right to counsel.

The prosecution should not have presented portions of the defendant's probable cause transcript with its memorandum in opposition to the defendant's motion to suppress Iandoli's identification of the defendant, but the defendant's rights to a fair trial were not thereby prejudiced. The defendant does not directly challenge the substance of the judge's ruling that declined to suppress Iandoli's testimony. If the probable cause transcript affected the ruling, it was inconsequential, or, as the judge put it, the defendant failed to specify how references to the transcript prejudiced his defense.

c. There was no reversible error in the prosecutor's closing argument. There was evidence that Trooper Hanna shouted at the defendants as he was starting to frisk them, but no evidence of what he said. The prosecutor's statement that Hanna had said "Keep your mouth shut" may be a reasonable inference of what Hanna said and was not, in any event, prejudicial. The prosecutor's statement that certain basic facts were not in dispute because they are uncontroverted was not a comment on the defendant's failure to testify.

5. After performing our review of the record pursuant to G. L. c. 278, § 33E, we see no justification for reducing the defendant's verdict or for ordering a new trial.

*Judgment affirmed.*