COMMONWEALTH vs. MICHAEL J. SULLIVAN.

Middlesex. May 9, 1991. - July 1, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Practice, Criminal*, Agreement between prosecutor and witness, Instructions to jury, Requests for jury instructions, Disclosure of evidence. *Constitutional Law*, Confrontation of witnesses. *Evidence*, Hearsay, Consciousness of guilt, Prior consistent statement, Photograph. *Witness*, Impeachment, Expert.

In the circumstances of a murder trial, the prosecution's introduction in evidence of a plea agreement between the Commonwealth and its chief prosecution witness did not create a substantial likelihood of a miscarriage of justice. [523-525]

At a murder trial, a statement made to a police officer by a nontestifying witness was properly admissible, not for its truth, but to show that the statement was made, and there was no error in allowing the officer so to testify where he was subject to cross-examination. [525-527]

At a murder trial, the handwritten statement of a witness, made two months after the murder and ten months before the witness entered into a plea agreement with the Commonwealth, was properly admissible, as it tended to counter the argument that the witness's testimony was a product of the promise of favorable treatment he would receive under the agreement. [527]

At a criminal trial, the judge's failure to inform counsel before closing arguments of a part of his charge to the jury to the effect that the jury might consider a defense witness's violation of a sequestration order in evaluating the witness's credibility was not contrary to Mass. R. Crim. P. 24 (b), and was not error in circumstances in which the defendant could not have reasonably been surprised and where, in any event, the defendant made no objection or request for a supplemental charge. [527-529]

At a murder trial, the judge properly denied the defendant's motion for a mistrial based on the Commonwealth's delay until after the opening statements in notifying the defendant of a mistake in a chemist's report, where the judge had adequately removed any adverse inferences that could have been drawn against the defense for failure to live up to promises in the opening statement by an immediate instruction that

placed the blame for the mistake squarely on the Commonwealth. [529-530]

At a murder trial, defense counsel's misstatement in his opening statement with respect to to the medical examiner's testimony was not shown to be the result of delayed disclosure by the Commonwealth of an alleged change in the medical examiner's opinion. [530-531]

There was no evidence in a criminal case that the Commonwealth presented false evidence either before the grand jury or at trial. [531-532]

At a murder trial there was no error in the admission of two photographs depicting comparisons of hair samples. [532-533]

INDICTMENTS found and returned in the Superior Court Department on April 24, 1986, and May 14, 1986, respectively.

The cases were tried before *J. Harold Flannery*, J.

*Steven J. Rappaport* for the defendant.

*Rosemary D. Mellor*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. Michael J. Sullivan appeals from his convictions of armed robbery and murder in the first degree. At trial, the Commonwealth presented evidence, chiefly through the testimony of Gary Grace, from which the jury could find the following facts. In the early hours of March 7, 1986, the victim, Wilfred McGrath, accompanied the defendant's sister, Kathy Ann Sullivan, to the Somerville apartment which Kathy, at that time, shared with the defendant. McGrath apparently was in possession of a large amount of cash and several grams of cocaine. The defendant and the victim left the apartment and arrived at Gary Grace's apartment in the company of two other men, Emil Petrla and Steve Angio, around 7:30 A.M.

While Grace was washing up in the bathroom and the victim was seated at the kitchen table, the defendant approached Grace and stated that they were planning to rob the victim. Grace told the defendant not to do so in his apartment. Despite this request, Emil Petrla struck the victim from *behind* with enough force to knock him to the

ground. The defendant then began to kick the victim. The defendant persisted in stomping on the victim's head and body. The defendant threatened Grace with a knife when Grace attempted to stop the beating.

The defendant, Petrla, and Angio then stole money, jewelry and cocaine from the victim. Thereafter, Grace, Petlra, Angio and the defendant deposited the body behind an abandoned grocery store, where it was discovered late that night. The medical examiner testified that the victim had lived approximately one hour after being left behind the store. The cause of death was severe trauma to the brain caused by blows with a blunt object, along with extensive blood loss.

Emil Petrla testified for the defense. His version of the evening's events diverged sharply from that of Grace. Petrla testified that he and Grace were alone in Grace's apartment with the victim. The victim supplied Grace with some cocaine, which Grace used. Petrla testified that Grace then claimed that the cocaine had been poor quality and started to fight with the victim. When the victim began to overpower Grace, Petrla stepped into the fray, knocking the victim to the ground and kicking him a few times. Grace, enraged, then began to stomp and kick the victim. When Grace was finally pulled away by Petrla, the victim looked dead. Petrla and Grace hid the body where it was later found.

The jury convicted the defendant of both armed robbery and murder in the first degree. He raises several issues here on appeal, none of which persuades us either to order a new trial or to reduce the conviction.

1. *Grace's plea agreement.* Sullivan first argues that he was unfairly prejudiced by the introduction in evidence of a plea agreement between the Commonwealth and the chief prosecution witness, Gary Grace. That plea agreement provided that, in exchange for truthful testimony and full cooperation, the Commonwealth would seek an indictment for being an accessory after the fact, to which Grace would plead guilty. The Commonwealth promised to recommend a sentence of six to seven years for that crime. Under the agreement, the Commonwealth would also dismiss the two indict-

ments, one each for murder and armed robbery, which were then pending against Grace. The agreement was to be void if "at the conclusion of the co-defendants' trials, the Commonwealth feels that [Grace] has not truthfully cooperated." Grace's attorney signed a statement at the end of the agreement to the effect that he had reviewed the agreement with Grace and that he was of opinion that Grace understood the agreement and had entered into it voluntarily.

Although Sullivan made no objection to the introduction of the agreement at the time of trial, he now contends that parts of the agreement constitute impermissible prosecutorial vouching for the witness's testimony. Sullivan also contends that the inclusion of the attorney's signed statement in the agreement constituted impermissible hearsay testimony. Because no objection was raised at trial, we review this claim only to determine whether there is a substantial likelihood of a miscarriage of justice due to any error the trial court may have made. See *Commonwealth* v. *Rosado*, 408 Mass. 561, 563-564 (1990); *Commonwealth* v. *Colon*, 408 Mass. 419, 444 (1990); *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 552-553 (1990). G. L. c. 278, § 33E (1988 ed.). In each of these cases, we concluded that the admission in evidence of a plea agreement did not warrant relief under G. L. c. 278, § 33E.

We addressed a similar problem in *Commonwealth* v. *Ciampa*, 406 Mass. 257 (1989), and determined that the introduction in that case of a plea agreement which contained several inappropriate provisions necessitated a new trial. We stated in *Ciampa* that "[s]uch an agreement does . . . present the possibility that the jury will believe that the witness is telling the truth, thinking that, because of the agreement's truthfulness requirement, the Commonwealth knows or can discover whether the witness is telling the truth." *Id.* at 260. In reference to the attorney's hearsay statement in that case, which was substantially the same as that at issue here, we noted that the statement "indicated that [the attorney] believed [the witness] was telling him the truth, thus justifying

his advice to [the witness] to plead guilty and to testify against the defendants." *Id.* at 262-263.

There were several factors in *Ciampa*, however, which distinguish it from the present case. First, the court's review in *Ciampa* was not limited solely to a consideration whether there was a substantial likelihood of a miscarriage of justice. Second, the plea agreement in *Ciampa* stated that it was contingent upon the truth of the witness's assertion that he did not shoot the victim. That statement, we said, could be interpreted by the jury "as asserting the Commonwealth's reasoned conclusion that [the witness's] representation was correct." *Id.* at 262. No such statement appears in Grace's plea agreement. Third, the agreement which went to the jury in *Ciampa* contained references to the government's commitment to place the witness in a program designed to protect his life and safety, which we held improper because it implied that the government believed that the witness had something to fear from the defendants. *Id.* In this case, the portion of the agreement which referred to the government's obligation to protect the witness was removed and never seen by the jury.

On motion by defense counsel, the trial judge should have deleted the statement signed by Grace's attorney, and should have reduced the number of times the agreement referred to the witness's obligation to tell the truth. *Ciampa, supra* at 262. However, in the circumstances of this case, the presentation of the agreement to the jury, in the absence of an objection by the defendant, did not create a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Rosado, supra.*

2. *Right to confront absent witness.* Sullivan next claims that his right to confront his accusers under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights was violated.[1] The

_____

[1]The Sixth Amendment to the United States Constitution provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Article twelve of the Massachusetts declaration of rights states, in relevant part, "every

defendant's sister, Kathy Ann Sullivan, asserted a privilege not to testify and the court declined to order her to do so.[2] Gary Grace testified that he heard the defendant tell Kathy that if anyone asked about the victim, to simply say that he left Kathy's apartment in a taxicab. One of the investigating officers testified at trial that Kathy told him that the victim left her apartment in a taxicab. The same officer testified that he checked with a number of taxicab companies, and that none of them had a record of any fares which would be consistent with the victim's being picked up at Kathy's apartment.

Sullivan claims that the statement attributed to Kathy was impermissible hearsay. We disagree. "[H]earsay is an extra-judicial statement offered to prove the truth of the matter asserted." *Commonwealth* v. *Keizer*, 377 Mass. 264, 269 n.4 (1979). *Commonwealth* v. *DelValle*, 351 Mass. 489, 491 (1966). In this instance, the Commonwealth offered the statement not for its truth but rather to show that the statement was made. The fact that Kathy made that statement to the police officer tends to support Grace's testimony that Sullivan told Kathy to make such a statement. A statement by Sullivan to his sister that she ought to tell anyone who asked that the victim left in a taxicab, when that was not in fact the case, is evidence that he was conscious of his guilt and was attempting to cover up evidence of the crime. Such evidence is admissible against a criminal defendant. See *Commonwealth* v. *Kerrigan*, 345 Mass. 508, 513 (1963). Because the statement was not offered to prove the truth of the matter it asserted, but rather only for the fact that it was made, it was not hearsay.

For the same reason, Kathy Ann Sullivan was not a witness against her brother and he had no constitutional right to subject her to cross-examination. The officer who testified

---

subject shall have a right . . . to meet the witnesses against him face to face."

[2]Neither party argues on appeal that there was no such privilege. We do not address that issue.

was fully competent to testify as to whether Kathy Sullivan ever uttered the statement at issue. He was available for and subject to cross-examination. There was no error in allowing the officer to testify concerning the statement. See *Anderson v. United States,* 417 U.S. 211, 219-220 (1973) (where statement is admitted merely to show that it was made, opportunity to cross-examine declarant is not required).

3. *Admission of Gary Grace's written statement.* Sullivan next contends that the trial judge erred by allowing the Commonwealth to introduce a nineteen-page handwritten statement of Gary Grace made in April, 1986. Grace testified at trial. "The long standing, general rule in this Commonwealth is that a witness's prior consistent statement is inadmissible . . . . As an exception to this general rule, however, a witness's prior consistent statement is admissible where a claim is made that the witness's in-court testimony. . . is the product of particular inducements . . . . [S]uch a prior consistent statement is admissible only to show that the witness's in-court testimony is not a product of the asserted inducement." *Commonwealth* v. *Zukoski,* 370 Mass. 23, 26-27 (1976) (citations omitted).

The defense made much of Gary Grace's agreement with the Commonwealth to testify at trial in exchange for lenient treatment with regard to his own pending indictments. Grace and the Commonwealth did not enter into that agreement until February, 1987, nearly ten months after the statement at issue was written. There was testimony to the effect that Grace had not been promised anything at the time he wrote the statement. The judge could reasonably have found that the statement tended to counter the allegation that Grace was testifying at trial because of the favorable treatment he would receive under the plea agreement. The jury were adequately instructed as to the permissible use of the statement. There was no error.

4. *Jury charge.* Sullivan's next argument on appeal is that the judge erred by failing to inform defense counsel prior to closing arguments of a part of the charge to be made to the jury. The contested charge, which is set forth in full in the

margin,[3] stated to the jury that if they found that Emil Petrla had received information about the testimony of those witnesses who preceded him, they could take that into account in evaluating his credibility. The judge found, at a posttrial hearing, that the charge was given either at the request of the prosecution without objection of defense counsel, or more likely, on the court's own motion.

Sullivan claims that the judge violated Rule 24(b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 895-896 (1979). That rule addresses requests for jury instructions from the parties, stating, in part, "[t]he judge shall inform counsel of his proposed action *upon requests* prior to their arguments to the jury" (emphasis added). Sullivan contends that the purpose of this rule is to allow counsel to tailor their closing arguments to the charge which will be given, and that the judge's action in this case deprived him of the opportunity to do just that. *Commonwealth* v. *Green*, 27 Mass. App. Ct. 762, 771 (1989) (" '[C]ounsel is entitled to know the Judge's treatment of each *proposed* instruction in order that counsel may frame their closing arguments accordingly' " [emphasis added]).

However, it is clear from the judge's findings that no request was made concerning this charge prior to closing arguments. As rule 24 (b) addresses only the judge's obligations when counsel makes proposals for instruction, the judge did not act contrary to that rule.

Moreover, the judge found that the defendant "did not object to the instruction before the charge, did not object on the ground of lack of opportunity to counter any effect of the requested instruction, and did not request anything supplemental or curative after the charge." Given the fact that

---

[3]"We have had in this case a so-called sequestration order, that is, no witness is to hear the testimony of a preceding witness before that witness takes the stand. If you find that Emil Petrla was apprised of the testimony preceding his testimony by his conversations with the defendant, or by any other mechanism or means, if you so find, you may take that finding into consideration in evaluating the credibility to be attached to the testimony of the witness Emil Petrla."

Emil Petrla had been vigorously cross-examined by the Commonwealth concerning his knowledge of the trial through conversations with the defendant, we cannot say that the defendant could reasonably have been surprised that that knowledge was a live issue. We decline to rule that the failure to inform counsel of the charge before closing arguments was error in the circumstances.

5. *Delayed disclosures by the Commonwealth.* Sullivan next argues that he was denied due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and art. 12 of our Declaration of Rights, because the Commonwealth failed to apprise him of mistakes in materials germane to the defense supplied during discovery. Sullivan argues that because his attorney made promises to the jury during opening statement on the basis of this faulty information which he was later unable to keep, the judge should have declared a mistrial. We do not agree.

In analyzing a claim of delayed disclosure of evidence to a criminal defendant, we look to the consequences that arise from the delay. *Commonwealth* v. *Wilson*, 381 Mass. 90, 114 (1980). See *Commonwealth* v. *Medina*, 372 Mass. 772, 780 (1977). In this case, neither of the alleged delays caused harm to the defendant's case.

a. *The chemist's report.* In his opening statement to the jury, the assistant district attorney stated that the evidence would show that when police officers executed a warrant to search the apartment at which Sullivan had been staying, Sullivan had removed all his belongings. The defendant's attorney responded to this in his opening statement by stating that, in fact, Sullivan had not removed all his belongings from the apartment, and that several items were seized. Moreover, those items, including blue jeans, boots, sneakers and shirts, had been tested by the state chemist and found to have no traces of blood on them. He based this conclusion on the fact that the chemist's report, given to him by the Commonwealth, attributed those items to the defendant.

The chemist's report was incorrect. The items attributed to Sullivan had in fact been seized from the residence of an-

other suspect. Approximately one week prior to the trial, the assistant district attorney became aware of the mistake in the chemist's report, but did not bring it to the attention of the defense until after opening statements. The defendant then moved for a mistrial, claiming that he would be unable to deliver on his promise made during opening statements.

The judge denied the motion for a mistrial. Instead, he instructed the jury that "yesterday in his opening statement, [defense counsel] said in substance that some clothing and footwear of the defendant were taken from 620 Mystic Avenue and tested for blood with negative results. [Defense counsel] was mistaken because of an informational error in a police report provided to him by the Commonwealth. Therefore, I instruct you to please disregard that segment of his opening statement, and draw no inferences concerning it."

The judge was not required to declare a mistrial because of the delayed disclosure. *Commonwealth v. St. Germain*, 381 Mass. 256, 262-263 (1980). The charge, taken by itself, is somewhat ambiguous as to what exactly was mistaken about the defense counsel's statement. From the charge itself, one might draw the conclusion that the items were seized from the apartment but tested positive for blood. However, in the context of the contradictory statements concerning whether there was any seizure, as well as the later testimony of the officers who executed the warrant and the testimony of the chemist, there was no real danger of juror confusion on that point.

In placing the blame for the mistake squarely on the Commonwealth, the judge adequately removed any adverse inference which could have been drawn against the defense from a failure to live up to promises made in the opening statement. There was no error.

b. *The medical examiner's opinion.* In his opening statement, defense counsel also stated that "[t]he medical examiner will tell you that the body couldn't have been left out in the cold more than a few hours based upon scientific testimony. It just doesn't hold up with what Gary Grace is going to tell you." Prior to trial, one of the investigating officers

had stated, both in an affidavit in support of a search warrant and in testimony before the grand jury that the medical examiner, Dr. Suarez, was of the opinion that the body could not have been in the place it was found more than a couple of hours. Sometime during April, 1986, the officer was informed that Dr. Suarez had changed his opinion in that regard. Sullivan claims that he was not informed of this change in the doctor's opinion. Upon discovering that Dr. Suarez would not testify in a manner consistent with the defendant's opening, Sullivan moved for a mistrial. The judge denied the motion.

Dr. Suarez himself testified before the grand jury on April 24, 1986. There he testified that the victim died between 6:00 A.M. and 10:00 A.M. on March 7, 1986. He also testified that, based on the amount of blood at the scene, the victim had been alive at the scene for approximately one hour. Because the victim was found around midnight, the medical examiner's grand jury testimony necessarily belied the assertion that the body had been left out for only a few hours. This testimony was available to the defendant. This grand jury testimony of Dr. Suarez is consistent with his trial testimony. That the defense counsel chose to rely on the second-hand statements of the police officer rather than the direct testimony of Dr. Suarez does not entitle the defendant to a mistrial. The defense's misstatement in the opening was not the result of any delayed disclosure on the part of the Commonwealth. There was no error in the judge's denial of the motion.

6. *Impeachment of Rosemary Squires-Clark.* The defendant next claims that his rights to due process of law were violated when the Commonwealth impeached a witness called by the defense. The witness, Rosemary Squires-Clark, testified, both before the grand jury and at trial, that a watch taken from the victim was sold to her by Gary Grace. Earlier, Grace had testified that he did not sell the watch to Clark. Sullivan claims that the Commonwealth, therefore, knowingly introduced false evidence, either before the grand jury or at trial. We do not agree.

A prosecutor is certainly under an obligation to refrain from presenting testimony at trial which he or she knows or should know is false. *Napue* v. *Illinois*, 360 U.S. 264 (1959). Nor may a prosecutor ethically present such testimony to the grand jury in order to obtain an indictment. *Commonwealth* v. *Salman*, 387 Mass. 160, 167 (1982). However, there is no evidence in this case that the Commonwealth did either.

In *Commonwealth* v. *McLeod*, 394 Mass. 727, 743 (1985), we stated that "[s]imply because a witness alters some portion of his testimony at the time of trial is not sufficient reason to conclude that the new testimony was false, or that the Commonwealth knew or had reason to know that it was false." Similarly, a prosecutor may marshal the evidence for or against the credibility of the witness, and allow the jury to determine from that evidence whether the witness is telling the truth. We do not require the prosecutor to make an independent credibility determination as to each witness prior to presenting that witness. There is no evidence that the Commonwealth acted improperly in this respect.

7. *Photographic evidence.* Sullivan next argues that the trial judge abused his discretion by admitting several photographs which depicted comparisons between hair samples taken from the defendant, the victim, and the victim's jacket. Sullivan claims that the witness who introduced the evidence was not properly qualified as an expert in the field of photomicroscopic hair analysis and that the procedure was faultily performed. There is no error in the admission of the photographs.

Although the testimony of an expert is not necessary in order for a photograph to be admitted in evidence, the witness here would have qualified as an expert.[4] From the witness's recitation of his qualifications, he clearly possessed "sufficient skill, knowledge or experience in the field of his testimony that the jury may [have] receive[d] appreciable assistance from it." *Commonwealth* v. *Boyd*, 367 Mass. 169,

---

[4]The Commonwealth never officially offered the witness as an expert, nor did the defendant object to the witness's testifying as an expert.

182 (1975). *Commonwealth* v. *Garabedian*, 399 Mass. 304, 310 (1987).

Each photograph in question depicted two hairs. Because of a slight focusing error, some of the photographs depicted the interior of one hair next to the exterior of another. Sullivan argues that because the interior of a particular strand of hair is not comparable to the exterior of another strand, this was overly confusing to the jury. The trial judge, however, allowed the evidence, and there is nothing in this record to indicate that the judge abused the wide discretion we afford trial judges in admitting photographic evidence. *Commonwealth* v. *Richenburg*, 401 Mass. 663, 672 (1988). The witness testified at length concerning the process by which the photographs were taken and what they represented, as well the differences in the photographs which were the result of the focusing error. Moreover, the jury was given photography which depicted both the interior and the exterior of each hair at issue. There was no error in admitting the photographs.

8. *Chapter 278, § 33E.* Pursuant to our duties under G. L. c. 278, § 33E (1988 ed.), we have reviewed the entire record. We find nothing which would compel us to exercise our discretion either to reduce the verdict or to grant a new trial.

*Judgments affirmed.*